THE STATE EX REL. LITTLE PRAIRIE SPECIAL ROAD DISTRICT OF PEMISCOT COUNTY ET AL. v. L. D. THOMPSON, STATE AUDITOR.

Court en Banc, June 15, 1926.

1. **CONSTITUTIONAL LAW: Special Road District Act.** Article VII of Chapter 98, Revised Statutes 1919, being the law relating to special road districts wherein roads are to be built by a general tax upon lands, does not deny due process of law to citizens, property-holders or taxpayers affected by legal proceedings under it, or violate any other provision of the Missouri Constitution.

2. ———: ———: **Due Process of Law.** A special road district organized under Article VII of Chapter 98, Revised Statutes 1919, does not violate Section 1 of the Fourteenth Amendment of the Constitution of the United

States, nor deny due process of law to citizens, property owners or taxpayers affected by proceedings in accordance with its requirements. The article is a general law; it is a local-option law, which the people of a prescribed territory may put into operation at a general election; in the general sense that it exercises governmental functions, the road district organized under the article, in pursuance to legislative prescriptions, is a municipal corporation; notwithstanding the landowners have a large voice in bringing the district into existence and in managing its affairs, from the standpoint of the State it is a legislative agency, created to exercise an exclusive governmental function; the roads are to be constructed by general taxes, but no bonds to raise money wherewith to construct roads can be issued without the consent of the citizens directly affected, after due notice; and a proposition to issue bonds for the purpose of constructing and improving roads, bridges and culverts in the district, without designating what particular roads are to be improved, if within the maximum limit of indebtedness prescribed by the Constitution, submitted by the board of commissioners and adopted by two-thirds of the legal voters at a special election held for the purpose, after due notice, denies to no person affected by the proceeding due process of law or other constitutional right. [Distinguishing Browning v. Hooper, 46 Sup. Ct. Rep. (U. S.) 141.]

Corpus Juris-Cyc. References: **Highways,** 29 C. J., Section 268, p. 553, n. 49, 60; Section 269, p. 554, n. 67, 69; Section 270, p. 554, n. 72; Section 271, p. 555, n. 83; Section 272, p. 556, n. 6; Section 285, p. 567, n. 67; Section 491, p. 725, n. 37. **Municipal Corporations,** 28 Cyc., p. 117, n. 12.

Mandamus.

PEREMPTORY WRIT AWARDED.

*Ward & Reeves* for relators.

(1)   The question whether special road districts are political corporations or municipal bodies within the meaning of our Constitution, or are mere local assessment districts, is to be determined by the decisions of our State courts. Hancock v. Muskokee, 250 U. S. 454; Backus v. Fort Street Union Depot Co., 169 U. S. 566; Williams v. Eggleston, 170 U. S. 310-311; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685; Merchants' Bank v. Pennsylvania, 167 U. S. 461.   (2)   Special road districts are political corporations or political subdivisions of the State within the meaning of our Constitution (Sec. 12, Art. 10), and such districts can therefore incur bonded indebtedness and levy general taxes on all taxable property in the district to pay same without regard to the limits fixed by the Constitution as to rates of tax levies. Harris v. Bond Co., 244 Mo. 664; State v. Burton, 266 Mo. 722; State v. Walker, 301 Mo. 115; Embree v. Road Dist., 257 Mo. 593.   (3)   Since, under the decisions of our own courts, special road districts are municipal corporations or political subdivisions of the State, the conclusion reached in the Texas case by the Supreme Court of the United States has no application here.   In any political subdivision or municipal corpora-

tion the sworn officials act for the people at large and when the power of taxation has been given to such officials by the Legislature, such officials have the legal right while acting for the whole people to propose a bond election in such municipality for the purpose of determining the will of the voters respecting the incurring of such indebtedness.    Such a power so conferred by the Legislature on local boards or commissioners of municipalities does not deny to the inhabitants the right of due process of law within the meaning of the Fourteenth Amendment to the Federal Constitution.    In such a political subdivision of the State no notice or hearing is necessary. Withnell v. Ruecking Construction Co., 249 U. S. 63; Hancock v. Muskogee, 250 U. S. 454; Valley Farms Co. v. Westchester, 261 U. S. 155; Wight v. Police Jury, 264 Fed. 705.    (4)    Our Constitution and statutes provide for the issuing of bonds by special road districts if approved by a vote of the people and also provide for the levying of general taxes on all property in the district for their payment.    The taxes so levied under our Constitution and laws are general taxes in special road districts and are not in any sense local benefit assessments.    Lamar Water & Electric Light Co. v. City of Lamar, 128 Mo. 188; Union Trust Co. v. Pagenstecher, 221 Mo. 121; State ex rel. v. Hackman, 275 Mo. 534; Illinois Central Railroad Co. v. Decatur, 147 U. S. 190; Valley Farms Co. v. Westchester, 261 U. S. 155; Wight v. Police Jury, 264 Fed. 705.

*North T. Gentry*, Attorney-General, and *Geo. W. Crowder*, Assistant Attorney-General, for respondent.

(1)    A special road district, under Art. VII, Ch. 98, Revised Statutes 1919, is given sole, exclusive and entire control and jurisdiction over the construction, care and maintenance of all the public roads within its boundaries, which are outside of the corporate limits of any city or village therein (Sec. 10809), and power to improve roads to a limited extent within such cities.    It also has power to make certain improvements on roads beyond its boundaries. Laws 1921, 1st Ex. Sess., p. 179.    The district, when once organized, becomes a permanent institution, subject to dissolution only by resubmitting the question to the voters therein, which may be done at any time after the first four years of its existence.    Sec. 10831, R. S. 1919.    The district when organized, has the following specific powers, to be carried out by its board of commissioners, to-wit: (a) To enforce the collection of poll taxes within its boundaries.    Secs. 10819-10822, R. S. 1919.    (b)    To sell the property of the district when the same is no longer needed, or its use no longer profitable. Sec. 10813, R. S. 1919.    (c)    To purchase all needed materials for road building and repairing.    Sec. 10814, R. S. 1919.    (d)    To plant,

protect and care for shade and ornamental trees along the roads. Sec. 10824, R. S. 1919, (e) To build bridges and culverts. Sec. 10815, R. S. 1919. (f) To take over for its own use a proportionate amount of moneys arising from taxes and licenses, but it has no power of special taxation. Secs. 10817-10818, R. S. 1919. (g) It may issue bonds, upon the approval of the qualified voters within its limits, such approval to be granted or withheld at an election called for that purpose by the board of commissioners, and the board of commissioners may levy a tax upon all the taxable property of the district for the purpose of paying interest on the bonds, and creating a sinking fund to pay the principal as it matures. Sec. 10847, R. S. 1919, as amended, Laws 1923, p, 345; Sec. 10848, R. S. 1919, as amended, Laws 1923, p. 339; Sec. 10850, R. S. 1919. The leading case in Missouri, on the question of the validity of what is now Art. VII, Ch. 98, is Harris v. Bond Co., 244 Mo. 664, wherein it was held that said article violates no provision of the Missouri Constitution. (2) Due process of law, while difficult of exact definition, means that the citizen, in any contest which has for its purpose the taking of his property, or property rights, shall be accorded the right and opportunity to challenge the propriety of each and every essential step in the proceeding against him. Holden v. Hardy, 169 U. S. 366, 398; Citizens Saving & Loan Association v. Topeka, 20 Wall. (U. S.) 655, 670; Turner v. Wade, 254 U. S. 64; Norwood v. Baker, 172 U. S. 269; Embree v. Kansas City Road District, 240 U. S. 242; Jones v. Yore, 142 Mo. 38; Barber Asphalt Co. v. Ridge, 169 Mo. 376; St. Louis v. Railway, 211 S. W. (Mo.) 671.

WHITE, J.—The relators present their petition for a writ of mandamus commanding the respondent, L. D. Thompson, State Auditor, to register bonds amounting to $150,000 issued by the Little Prairie Special Road District of Pemiscot County. The respondent waived the issuance of an alternative writ, entered his appearance and filed his demurrer to the petition as and for such writ.

The facts stated in the petition are briefly as follows: The Little Prairie Road District of Pemiscot County was duly organized in 1917, under the statute which is now Article 7, Chapter 98, Revised Statutes 1919, and it is now and ever since 1917 has been organized, acting and functioning as a special road district. Said article was adopted by the people of said district at an election duly called for that purpose by the county court, and thereafter three commissioners for the government of said district were chosen as provided in said article. The commissioners received from the county court and used the machinery kept for working roads belonging to districts previously existing in said territory; exercised jurisdiction over the highways in said territory; improved and repaired the public highways

in said district by employment of laborers, and by using rented, leased and purchased teams, tools and implements; held meetings as prescribed in said article, once a month or oftener; received the district's proportion of money collected from the dramshop, pool and billiard licenses by the county, and from 1917 to 1925, inclusive, collected upon the property in said road district all county taxes levied for road and bridge purposes, and in all respects discharged the functions which they were authorized to discharge under said Article VII. In 1919, after the said Little Prairie Special Road District had been functioning, as aforesaid, for a period of two years, the board of commissioners, authorized by an election of the voters of the district, issued bonds in the sum of $105,000. Beginning with that year the said district through its board of commissioners levied a general *ad valorem* tax upon all property subject to taxation within the district, and from year to year collected same for the purpose of providing funds to meet the interest and principal of said bonds. Beginning with the year 1921, the board annually, with the proceeds of said taxes, paid off and retired certain of said bonds, reducing the outstanding indebtedness to $81,500.

August 29, 1925, the board of commissioners made an order proposing to issue bonds in the sum of $150,000, on behalf of said district, for the purpose of construction and improvement of roads, bridges and culverts in said district, the first installment of said bonds to become due January 1, 1928. The order recited that the valuation of the property within the district was $6,745,000, and the bonds proposed, together with the existing indebtedness, would not exceed five per cent of the assessed valuation of the property of the district. A special election was called as provided in Sections 10747, 10748, 10749 and 10750, Revised Statutes 1919, amended by the Act of 1923, Laws 1923, pp. 346 to 349, and was duly held in accordance with the said order, September 24, 1925; the proposition to issue bonds for $150,000 was carried by a vote of 1231 for, and 52 votes against the proposition—more than two-thirds voting for it, as the law required.

The bonds were duly printed, executed, and February 26, 1926, offered to the State Auditor, L. D. Thompson, respondent, for registration, and said State Auditor refused to register them or permit them to be registered, which refusal was not on account of any irregularity in the organization of said district, nor in the proceedings authorizing the issuance of said bonds, but solely on account of a decision of the Supreme Court of the United States in the case of Perry Browning et al. v. E. M. Hooper et al., decided by that court January 4, 1926, and reported in 46 Sup. Ct. Rep. 141.

The demurrer is on the ground that the statute under which the Little Prairie Special Road District was organized and amendments thereto (Art. VII, Ch. 98, R. S. 1919), was unconstitutional, and denied the citizens, property holders and taxpayers, affected by said proceeding, due process of law, in violation of Section 30, Article 2, of the Constitution of Missouri, and Section 1 of the Fourteenth Amendment to the Constitution of. the United States, and that such is the effect of the opinion rendered by the Supreme Court of the United States in the case of Browning v. Hooper.

I.   This court in several cases has held the road district law, Article VII, Chapter 98, is not in violation of any provision of the Consti-

**Missouri Constitution.** tution of this State. Therefore we have to consider only whether on the authority of Browning v. Hooper, that article is in conflict with the due process provision of Section 1 of the Fourteenth Amendment to the Constitution of the United States, which is the same as Section 30. Article II, of the Constitution of Missouri.

The statute of Texas which was before the Federal Supreme Court provided that any county in the State of Texas, "or any political subdivision, or *defined district, now or hereafter to be described and defined, of a county, is hereby* authorized and empowered

**The Texas Case.** to issue bonds," etc. not exceeding one-fourth of the assessed valuation of the real property "of such county or political subdivision, or defined district thereof." Upon the petition of fifty, or a majority of resident taxpaying voters in any county, political subdivision, or defined district, to the County Commissioners' Court, such court should have power to order an election to determine whether or not the county, political subdivision, or defined district, should issue bonds in any amount not exceeding one-fourth of the assessed valuation of the property, etc., in such county, political subdivision or defined district. If it appeared to the County Commissioners' Court that two-thirds majority of the votes cast at the election were in favor of the issuance of the bonds then the County Commissioners' Court should issue bonds on the faith and credit of said county, or political subdivision, or defined district. It was provided further that the order and notice of election shall describe the boundaries, or any political subdivision, or defined district. The County Commissioners' Court was to levy and collect a tax upon the property of the county, political subdivision, or defined district, for the purpose of providing a sinking fund and paying interest on the bonds. Any political subdivision or defined district accepting the provisions of the law by voting such tax, was made and created a body corporate.

The suit in the Browning case was to enjoin the issuance and sale of bonds proposed to be issued and sold to construct and maintain roads in Road District No. 2 of Archer County, Texas, a "defined district." A petition signed by seventy-four persons residing within the bounds of a territory described in the petition by metes and bounds in Archer County, Texas, prayed for an election for the purpose of determining whether $300,000 in bonds should be issued and a tax levied upon the property therein to pay the bonds. The County Commissioners' Court thereupon ordered and established a district within the metes and bounds described in the petition and declared it to be a body corporate, and on the same day fixed a time and place for the election, which resulted in favor of the proposition. The opinion after stating other facts in relation to the condition existing in Archer County, held that the proceeding could not be sustained as a levy of a general tax, and said:

"The expenditure of the moneys so raised is not limited to any specified roads. And it is significant that, in the case of a road district, the court's duties in respect of the amount to be raised and the lands to be subjected to the charge are purely ministerial, and confined solely to carrying out the will of the petitioners when approved at the election. Here, on the initiation of individuals signing the petition, a special district was carved out to furnish credit and to pay for specified improvements on designated roads wholly within the territory selected. The purpose was special, and the district will cease to exist as a body corporate upon the payment of the bond debt. It is clear that the burdens here sought to be imposed on appellants' lands are special assessments for local improvements. [Embree v. Kansas City Road District, 240 U. S. 242, 247; Illinois Central Railroad v. Decatur, 147 U. S. 190-197-209.]"

And further: "The Legislature did not create the road district, levy the tax or fix the amount to be raised. Under the act, road districts are not required to correspond with or to include any political subdivision. [Moore v. Commissioners' Court, 175 S. W. (Tex. Civ. App.) 849; Bell County v. Hines, 219 S. W. (Tex. Civ. App.) 556.] There is nothing in the law to guide or to limit the action of the signers of the petition in selecting property to be assessed. Subject to the vote of a district of their own choice, the petitioners' designation is absolute. The Commissioners' Court has no power to modify or deny; it is bound to grant the petition. [Huggins v. Vaden, 253 S. W. (Tex. Civ. App.) 877, 878; Id., 259 S. W. 204, 206; Meurer v. Hooper, 271 S. W. (Tex. Civ. App.) 172, 176.]"

The court points out that under the rulings of Texas courts, a defined district is not a political subdivision of the State, whether it coincides with the external boundaries of county precincts or not. The opinion then proceeds as follows:

"And plainly the authority granted (Art. 627) to issue road bonds up to one-fourth the assessed valuation and to levy taxes ratably to pay them *is not a legislative determination of the rate or amount* of the tax imposed on appellants' property. The amount of the bonds to be issued and the property to be taxed are the elements which determine the burden. *These were fixed by the petition and election.* The Legislature may make assessments for local improvements ratably on the basis of property valuation (Valley Farms Company v. Westchester, 261 U. S. 155); but, where the amount to be raised is determined, and the property to be assessed is selected as in this case, the requirement that the burden shall be so spread is not a legislative assessment.

· "Where a local improvement territory is selected, and the burden is spread by the Legislature or by a municipality to which the State has granted full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits. [Valley Farms Co. v. Westchester, supra; Hancock v. Muskogee, 250 U. S. 454, 459; Withnell v. Construction Co., 249 U. S. 63, 69; Wight v. Police Jury, 264 Fed. 705.] But it is essential to due process of law that such owners be given notice and opportunity to be heard on that question where, as here, the district was not created by the Legislature, and there has been no legislative determination that their property will be benefited by the local improvement. Appellants were denied all opportunity to be heard. No officer or tribunal was empowered by the law or the State to hear them, or to consider and determine whether the road improvements in question would benefit their lands. The act is repugnant to the due-process clause of the Fourteenth Amendment. [Embree v. Kansas City Road District, supra, 251.]"

Thus it will be seen from the court's construction of the Texas statute that the bonds of a "defined district" were not authorized under the general taxing power because there was no legislative determination of the rate or amount of the tax to be imposed, nor of the area composing the assessment district.

.They were not authorized as issued by a special benefit assessment district, because the property owners of the district had no opportunity to be heard in determining whether their property would be benefited by the creation of the district and the imposition of the tax. Therefore the statute was unconstitutional.

The "defined district" was not a political subdivision of the State. It was not in fact "defined" and it had no previous existence. The election provided for was to determine only whether the bonds should be issued for road purposes. Nothing else was submitted. On the filing of a petition of seventy-four citizens, describing themselves as resident taxpaying voters of a territory described in their petition, pray-

ing that an election be called to determine whether bonds might be issued in the amount desired, the County Commissioners' Court ordered the district within those metes and bounds established as a body corporate, and ordered the election to be held afterwards. The statute did not provide any rule or method by which any certain or limited territory might be included in the defined district. In fact, the County Commissioners' Court had no function to perform at all except to order the election as desired by the petitioners. The statute, quoted above, provided that the district shall come into existence as a body corporate on the acceptance of the provisions of the statute by voting the bond issue. That is, when the vote is taken the district as a corporate body *ipso facto* comes into existence and ceases to exist when the bonds are paid.

This was an attempt to delegate to private persons non-delegable legislative authority. In that particular the ruling is in strict accord with the holding of this court. In City of St. Louis v. Russell, 116 Mo. 248, it was held that the city had legislative authority to determine the location of livery stables in the city, but it could not delegate that power to the owners of property in a block where it was proposed to locate livery stables, and an ordinance providing that a livery stable might be located in a block with the written consent of the owners of one-half the ground in the block was an attempted delegation of legislative authority to private persons.

II. The case of Embree v. Kansas City Road District, 240 U. S. 242, is cited in the opinion, and the ruling in that case illustrates the distinction between the law construed in the Browning case and

**Missouri Cases.** our statute. The case was appealed from this court, 257 Mo. 593, which had under consideration what is now Article VIII, Chapter 98, Revised Statutes 1919, relating to districts where roads are built by benefit assessments. In that respect it differs from Article VII, Chapter 98, involved here, where the roads are built by imposition of a general tax. In the Embree case it was held that the statute was constitutional because it provided for a hearing for the property owners of the district upon the question whether their land would be benefited by the building of roads in the contemplated district, so that they might be assessed for special benefits. [240 U. S. 1. c. 248-249.] It was indicated that if the statute had not accorded the landowners an opportunity to be heard, it would have been unconstitutional, but from the discussion of the matter it is plain that the necessity of a hearing was solely because the statute under which the road district was created provided for benefit assessments to pay the cost of building roads. It was said by the court (1. c. 248) that there was no doubt "that the Legislature intended to authorize and require the county court to

adjust the boundaries so they would include only such lands as might be reasonably expected to be benefited by the improvement of the district roads, and *therefore might properly be charged with the cost of that work."*

We had that benefit assessment article under consideration in State ex inf. Killam v. Colbert, 273 Mo. 198, l. c. 210, where we held that the county court in organizing the district and in passing upon whether lands included in the district would be benefited, exercised a judicial function; in the proper determination of that judicial question notice to the parties interested was required. This court, en banc, in case of State ex inf. Hales v. Walker, 301 Mo. 115, had under consideration Article XIII of Chapter 98, relating to road districts built by benefit assessments in counties under township organization, and it was there held that notice was not necessary to non-resident owners before inclusion of their lands in a contemplated district. Judges JAMES T. BLAIR and GRAVES dissented. It is doubtful whether the conclusion in the opinion is sound and in accord with the ruling of the Federal Supreme Court in the Embree case.

But the organization of a road district under Article VII, Chapter 98, is on a different footing. It does not contemplate the levy of special assessments made only on the theory that the property affected is enhanced in value by reason of special benefits before it can be included in the districts.

III.   A road district organized under Article VII, Chapter 98, Revised Statutes 1919, is declared by Section 10801 to be a corporation for public purposes. Several times this court has had this article under consideration, and has held proceedings under it valid and constitutional. [Harris v. Bond Co., 244 Mo. 664, l. c. 683; State ex inf. Pope v. Mansfield Special Road District, 299 Mo. 663, l. c. 668.]

The statute relating to the organization of drainage districts is very similar to that providing for the organization of road districts in Article VII, Chapter 98. Drainage districts when organized possess some of the characteristics of road districts of both kinds—assessment benefit districts organized under Article VIII, and special districts organized under Article VII. Drainage district statutes provide for benefit assessments and also for a general tax, and are organized by legislative authority as if directly created by the Legislature. [Houck v. Little River Drainage District, 239 U. S. 254, l. c. 264.]. In the Houck case the court said:

"It is apparent that when the district was duly organized it had the same footing as if it had been created by the Legislature directly; and if the Legislature could have established this district by direct act and then constitutionally imposed upon the lands within the dis-

315 Mo.—5.

trict the ratable tax in question to pay the expenses of organization and for preliminary work, it cannot be doubted that the Legislature had power to impose the same tax upon the district as organized under the judgment of the court.

"The ultimate contention, then, is that the plaintiffs in error cannot be subjected to this preliminary tax of twenty-five cents an acre because their lands, as they insist, will not be benefited by the plan of drainage. In authorizing the tax, it is said, the Legislature has departed from the principle of benefits, and the tax is asserted to be *pro tanto,* an uncompensated taking of their property for public use. But the power of taxation should not be confused with the power of eminent domain. Each is governed by its own principles."

See also In re Birmingham Drainage District, 274 Mo. 140, l. c. 151; State ex rel. Caldwell v. Little River Drainage District, 291 Mo. 72, l. c. 78; State ex rel. Kinder v. Little River Drainage District, 291 Mo. 267, l. c. 289.

In the Birmingham case, 274 Mo. l. c. 151, this court said: "These districts are public corporations which may only be constituted by legislative authority exercised through an enactment of the General Assembly and put into effect either directly or by appropriate agencies designated by legislative authority"—citing cases.

And it was said in case of State ex rel. Caldwell v. Little River Drainage District, 291 Mo. l. c. 78-79: "In this State, however, legislative authority to provide for rural drainage is exercised through local organizations, incorporated under general law as drainage districts. This method, it is said, accords with the spirit of modern government which gives to the people, or any part of them, the largest possible control in any matters affecting them and their interests. . . . But, notwithstanding the landowners have such a large voice in bringing them into existence and in managing their affairs, from the standpoint of the State the districts are none the less legislative agencies exercising exclusive governmental functions—the private benefits accruing to the individual landowners being purely incidental."

Article VII, Chapter 98, is a general law, applicable to any territory not exceeding eight miles square wherein is located a city, town or village containing less than 100,000 inhabitants, excepting counties of 50,000 or more, lying adjacent a city of 300,000 or more. [Sec. 10800.] It is a local-option law which the people of the described territory may put into operation by a vote of the people residing therein. [Sec. 10829.] The proceeding is initiated by the resident taxpayers of the proposed district and submitted to a vote by the county court. This meets the requirements of our Constitution. The objections to a proceeding of this kind are mentioned in the case of Merchants Exchange v. Knott, 212 Mo. 616, l. c. 638, and in the

case of Ex parte Cavanaugh, 313 Mo. 375. Thus the Legislature itself defined and marked out the kind of a territory that may be organized into a road district, and the county court as an administrative agent of the Legislature put the legislative will into effect by ascertaining the facts to be applied in such organization. While the proceeding is initiated by persons affected by the organization, the district is created by the Legislature through its appropriate agency.

The district when organized is a municipal corporation, not in the limited sense applied to certain cities, but in the general sense in that it exercised governmental functions. It is a political subdivision of the State. [State ex rel. Kinder v. Little River Drain. Dist., 291 Mo. 1. c. 280.] It was said in the Caldwell case, 291 Mo. 79: "But in the larger and ordinarily accepted sense, the term (municipal corporation) is applied to any local corporation, exercising some functions of government, and hence includes counties, school districts, townships under township organization, special road districts, and drainage districts." [See also State ex inf. Hales v. Walker, 301 Mo. 115; Hauessler Inv. Co. v. Bates, 306 Mo. 392, 1. c. 409, 207 S. W. 632.]

In the City of Uniondale v. Rugh, 225 S. W. 985, the county court in incorporating territory into a city was held to have performed a legislative act. The court said (l. c. 987):

"While the county court, in passing upon the petition, is performing a judicial function, and its pronouncement thereon is a judgment, yet all the agencies invoked by the statute—the majority of the taxable inhabitants, their petition, and the county court—taken collectively, is but the instrumentality through which, in the manner prescribed, the legislative power is exercised in creating cities of the fourth class."

IV. A road district, being a municipal corporation, has power to levy general taxes upon property within its boundaries for purposes of the district. [Harris v. Bond, 244 Mo. 666, 1. c. 683; City of Uniondale v. Rugh, 225 S. W. 985; State ex inf. v. Mansfield Special Road Dist., 299 Mo. 668; Little Prairie Special Road Dist. v. Pemiscot County, 297 Mo. 568.] In the case last cited the court had under consideration this particular road district, and assumed that it had the power of taxation. The case arose as to the proper appropriation of the funds arising from such taxation.

Thus the essential distinctions between the Texas case and this case, are these:

(1) The road district here was a legislative creation, which the "defined district" in the Texas case was not, for these reasons:

(a) Because our Legislature has prescribed a definite method and kind of territory in which a district can be organized; and (b), Because the district was put into operation and effect by the proper

administrative agencies of the Legislature. In the Texas case the Legislature did not confer upon any administrative body authority to lay off a district, nor provide a definite method by which it could be done. It was an attempt to delegate to individuals discretion and authority to lay off the district.

(2) The road district, in this case is, in the broad sense, a municipal corporation, a political subdivision of the State, with power to impose general taxes to carry out the purposes for which it exists. The Texas "defined district" possessed none of those characteristics or powers.

(3) The district here exists in perpetuity, or until disorganized by legislative act. The Texas district lived only long enough and only for the purpose to vote and to pay such bonds as the people desired to issue.

The peremptory writ is awarded. All concur.