[No. 26042. *En Banc.* April 27, 1936.]

PRESTON ROYER et al., *Appellants,* v. PUBLIC UTILITY DISTRICT NO. 1 OF BENTON COUNTY *et al.,* *Respondents,* PACIFIC POWER & LIGHT COMPANY, *Appellant.*[1]

[1]Reported in 56 P. (2d) 1302.

*Moulton & Powell,* for appellants Royer *et al.*

*John A. Laing, Henry S. Gray,* and *Rigg, Brown & Halverson,* for appellant Pacific Power & Light Company.

*Bruce E. McGregor* and *Jack R. Cluck,* for respondents.

*Griffiths & Cluck* and *Post, Russell, Davis & Paine, amici curiae.*

MAIN, J.—The plaintiffs, as taxpayers, brought this action to have chapter 1 of the Laws of 1931, p. 3, Rem. Rev. Stat., § 11605 [P. C. § 4498-11] *et seq.,* declared unconstitutional. After the action was instituted, the Pacific Power & Light Company intervened and took the same position. To the plaintiffs' second amended complaint and the complaint in intervention, demurrers were interposed and sustained. The parties refused to plead further, and from the judgment dismissing the complaint, and also the complaint in intervention, the plaintiffs and the intervener appeal.

The act in question is one relating to and authorizing the establishment of public utility districts. Section 1, p. 3, Rem. Rev. Stat., § 11605 [P. C. § 4498-11], provides that it is the purpose of the act to authorize the establishment of public utility districts to conserve the water and power resources of the state, and to supply public utility service, including water and electricity for all uses. Section 2, p. 3, Rem. Rev. Stat., § 11606 [P. C. § 4498-12], states that municipal corporations, to be known as public utility districts, are authorized for the purposes of this act and may be established as provided. Section 3, p. 4, provides that, at any general election, the board of county commissioners of any county in the state

" . . . may, or on petition of ten (10%) per cent of the qualified electors of such county, based on the

total vote cast in the last general county election, shall, by resolution, submit to the voters of such county the proposition of creating a public utility district which shall be coextensive with the limits of such county as now or hereafter established. . . ." Rem. Rev. Stat., § 11607 [P. C. § 4498-13].

For the establishment of such a district, there is no provision for notice to those whose property will be included therein. In the same section, there is another provision for the formation of public utility districts with a less area than the entire county; and in connection with the establishment of such a district, notice is required. The act, as already indicated, empowers the district to acquire, operate, and maintain an electric system for all uses.

In the complaint, and also in the complaint in intervention, it is stated that public utility district No. 1 of Benton county, this state, was created in accordance with the provisions of chapter 1 of the Laws of 1931, p. 3, Rem. Rev. Stat., § 11605 [P. C. § 4498-11] et seq., at a general election held on November 6, 1934, and that, at this election, commissioners for the utility district were elected.

Two classes of questions are presented, one going to the validity of the act, and the other class, to questions that will or may arise in connection with the operation of the district. At this time, we shall only decide those questions which go directly to the constitutionality of the law.

The first of these is whether, under the fourteenth amendment to the Federal constitution and § 3 of Art. 1 of the state constitution, the district could be legally constituted without notice to the property owners within the district and an opportunity to be heard upon the boundaries thereof, or whether their property should be included therein. This question depends

upon whether the district which coincides with the boundaries of the county was created by act of the legislature or by petition of ten per cent or more of the qualified electors of Benton county. If the district was created by act of the legislature, it is a generally settled and accepted proposition of law that no notice is necessary; on the other hand, if the district is created by the petition, the law is equally well settled that notice is necessary.

The statute, § 3, p. 4, Rem. Rev. Stat., § 11607 [P. C. § 4498-13], provides that, when the district shall be coextensive with the limits of the county, a general election for the purpose of establishing such district may be called by the board of county commissioners, and shall be called upon a petition signed by ten per cent of the qualified electors of the county. The legislature in this section has provided for a district with boundaries coextensive with the limits of the county and left it to the electors to determine when the act shall become operative. Where a statute provides for the creation of a district such as the one here in question, the boundaries of which shall coincide with a political subdivision of the state, and leaves it to a local agency to determine when the law shall go into effect, there is no delegation of legislative power, and it is the legislature that has defined the boundaries. *State ex rel. Little Prairie Special Road Dist. v. Thompson,* 315 Mo. 56, 285 S. W. 57; *Wight v. Police Jury,* 264 Fed. 705.

In the case of *State v. Storey,* 51 Wash. 630, 99 Pac. 878, the legislature had passed a law prohibiting livestock to run at large in counties where three-fourths of the land was fenced, and provided that it should be the duty of the board of county commissioners of the respective counties, when ten or more freeholders should make application for the enforcement of the act, at once to determine whether three-fourths of the land,

outside of incorporated towns and cities in the county, was under fence, and it was there held that this was not an unlawful delegation of legislative power. It was there said:

"The act was passed by the legislature. That authority may say definitely when an act shall take effect; or it may fix an indefinite time in the future upon the happening of some event before the act shall take effect. Cooley, Const. Lim. (7th ed.), p. 169. The mere fact that the act does not take effect until the contingency arises, does not indicate a delegation of legislative power, even where the contingency depends upon the action of certain persons. It is conceded, if we understand the appellant's position, that certain laws may become effective or not upon local judgment, and Cooley on Constitutional Limitations (7th ed.), pp. 173-4, is cited to that effect. In such cases it cannot be said that legislative authority is delegated. The local judgment merely accepts or rejects the operation of the legislative act. The rule is tersely stated in 8 Cyc. p. 830, as follows:

" 'While the legislative body cannot delegate the power to legislate, the legislature may delegate the power to determine some facts or state of facts upon which the statute makes or intends to make its own action depend.'

"And this rule is sustained by the great weight of authority. In this case the apparent intention of the legislature was that the act should be effective in those counties where three-fourths of the land therein was under fence. The designation of the ten freeholders and the board of county commissioners was for the purpose of determining and proclaiming that fact. These persons constitute an agency for a specified purpose, and are in no manner clothed with legislative powers."

The analogy between that case and the one now before us is close. There, the act would take effect when ten or more freeholders should request the county commissioners to ascertain the fact of whether three-

fourths of the land of the counties, outside of cities and towns, was under fence. Here, the legislature provided that public utility districts, with boundaries coextensive with those of the particular county, could be brought into existence by a majority vote of the electors of the county when the question of whether the district should thus be created had been submitted to the voters either by the commissioners, of their own volition, or upon request of ten per cent of the qualified electors. The purpose of this submission was to determine the question of whether the majority of the electors wanted the act to operate coextensively with the county boundaries. The district having been created by the act of the legislature, notice was not necessary.

The case of *Drum v. University Place Water Dist.*, 144 Wash. 585, 258 Pac. 505, about which much has been said, is not applicable to the present situation, because there the boundaries of the district were fixed in the petition, and, in fixing them, the signers of the petition necessarily exercised a judgment or discretion as to what lands should be included in the district. That was not a case where the boundaries were fixed by the legislature coextensive with the boundaries of any political subdivision of the state. The same may be said of the case of *Browning v. Hooper*, 269 U. S. 396, 46 S. Ct. 141.

In the case of *State ex rel. Little Prairie Special Road Dist. v. Thompson*, 315 Mo. 56, 285 S. W. 57, *supra*, the distinction between the *Browning* case and the case then before the court was pointed out in this language:

"The road district here was a legislative creation, which the 'defined district' in the Texas case was not, for these reasons:

"(a) Because our Legislature has prescribed a definite method and kind of territory in which a district

can be organized; and (b), Because the district was put into operation and effect by the proper administrative agencies of the Legislature. In the Texas case the Legislature did not confer upon any administrative body authority to lay off a district, nor provide a definite method by which it could be done. It was an attempt to delegate to individuals discretion and authority to lay off the district.

"The road district, in this case is, in the broad sense, a municipal corporation, a political subdivision of the State, with power to impose general taxes to carry out the purposes for which it exists. The Texas 'defined district' possessed none of those characteristics or powers."

■ It is further said that, in Benton county, there are a number of municipal corporations, cities or towns, and that these could not be included within the district. It is a general rule that there cannot at the same time within the same territory exist two distinct municipal corporations exercising the same powers, but even though one or more of these corporations may exercise some of the powers which have been given to the public utility district, this does not make the act unconstitutional and void.

In the case of *Paine v. Port of Seattle,* 70 Wash. 294, 126 Pac. 628, 127 Pac. 580, where a port district had been created with boundaries that coincided with King county, it was said:

"We conclude that the law is not unconstitutional because by its terms it gives to a port district some of the powers and authorizes it to make expenditures and incur indebtedness for some of the things for which a county and city may make expenditures and incur indebtedness."

■ In addition to this, § 11, p. 29, of the act here in question expressly provides that:

"When this act comes in conflict with any provision, limitation or restriction in any other law, this act shall

govern and control." Rem. Rev. Stat., § 11615 [P. C. § 4498-21].

As already indicated, we express no opinion upon any of the questions presented which have not been herein specifically disposed of. Those questions can better be presented as they arise, if they do, by reason of any act of the utility commissioners in conducting the affairs of the district.

The judgment will be affirmed.

MILLARD, C. J., HOLCOMB, BEALS, BLAKE, STEINERT, and GERAGHTY, JJ., concur.

TOLMAN J., dissents.