Argued January 11; affirmed January 24, 1939

# In re PETITION OF BOARD OF DIRECTORS OF TILLAMOOK PEOPLE'S UTILITY DISTRICT

(86 P. (2d) 460)

*R. K. Powell,* of Portland, for appellant.
*Gus J. Solomon,* of·Portland, for respondent.

BEAN, J. It is urged by appellant Clark Hadley, in support of his demurrer, that the act under which said utility district was created was in contravention of the due process clause of section 1 of the fourteenth amendment of the constitution of the United States, and section 10 of Art. I of the constitution of the state of Oregon, and that it unlawfully delegates legislative power, in violation of section 1, Art. III, and section 1, Art. IV, of the constitution of Oregon. It is urged by the appellant that the act in question makes no provision for a hearing on the question of the property to be included within the territorial limits of the proposed district and makes no provision for a hearing relative to the benefits to such property, and that, at most, all the Hydroelectric Commission can do is to recommend what property shall be included within the proposed district, which recommendation is not binding upon the sponsors of the proposed district.

Appellant contends that the trial court erred in overruling the demurrer and entering the decree. Section 12, Art. XI, of the constitution of Oregon, adopted in 1930 by the electors of the state under the initiative petition, provides as follows:

"People's utility districts may be created of territory, contiguous or otherwise, within one or more counties, and may consist of an incorporated municipality, or municipalities, with or without unincorporated territory, for the purpose of supplying water for domestic and municipal purposes; for the development of water-power and/or electric energy; and for the distribution, disposal and sale of water, water-

power and electric energy. Such districts shall be managed by boards of directors, consisting of five (5) members, who shall be residents of such districts. Such districts shall have power:

 (a) To call and hold elections within their respective districts.

 (b) To levy taxes upon the taxable property of such districts.

 (c) To issue, sell and assume evidences of indebtedness.

 (d) To enter into contracts.

 (e) To exercise the power of eminent domain.

 (f) To acquire and hold real and other property necessary or incident to the business of such districts.

 (g) To acquire, develop, and/or otherwise provide for a supply of water, water-power and electric energy.

Such districts may sell, distribute and/or otherwise dispose of water, water-power and electric energy within or without the territory of such districts.

The legislative assembly shall and the people may provide any legislation, that may be necessary, in addition to existing laws, to carry out the provisions of this section.''

The act provides that whenever not less than five per cent of the voters in each municipality and separate parcel of territory outside of incorporated cities desire to unite to form a utility district, they shall file the required ''voters' preliminary petition'' with the Hydroelectric Commission. § 2, subd. 10; §§ 8 and 10, Chap. 279, Oregon Laws 1931 (being § 56-3402, as amended in 1933; §§ 56-3408 and 56-3410, Oregon Code Supplement 1935). If the petitions are satisfactory, the commission sets the time and place for hearing said petitions. Notice of such hearing is given by

posted and published notices. § 5, Chap. 279, Oregon Laws 1931 (§ 56-3405, Oregon Code Supplement 1935). Section 6 of the act provides in part:

"At said hearing the said commission shall make a report of its preliminary investigation and shall hear evidence in favor of and against the formation of such district. Within 60 days after the close of said hearing, the commission shall make its final report on the advisability of creating the district, * * *."

This section was amended by chapter 272, Oregon Laws 1933, and is now section 56-3406, Oregon Code Supplement 1935.

It is claimed by the appellant that this section does not provide that at the hearing the commission will hear evidence as to what lands shall or shall not be included in the proposed district, and whether all the land to be included therein will be benefited thereby. Section 19 of chapter 279, Oregon Laws 1931, which is section 56-3419, Oregon Code Supplement 1935, provides:

"If, after such hearing, the commission shall find that any portion of territory has been included in a proposed district that should not have been, or that any territory has been omitted therefrom that should, in the interests of the public welfare, have been included, the commission shall recommend such changes in the boundaries of such proposed district as the commission deems just, and conducive to the public welfare. Such recommendations shall be included in its final report."

Section 20, which is section 56-3420, Oregon Code Supplement 1935, further provides:

"If the commission, in its final report, shall recommend changes in the boundaries of the proposed district described in the preliminary petition, the sponsors of said preliminary petition may, in their final petition,

change the boundaries of the proposed district to conform to such recommendation and, upon the filing of the final petition so modified, an election shall be called to determine whether such utility district shall be formed of the territory described in said final petition. * * * ''

The board of directors, the respondents, submit that the Tillamook People's Utility District is a municipal corporation; therefore no provision for hearing on the questions of benefits and boundaries need be provided for in order to sustain its validity, and that there are distinctions between public corporations, which are local improvement or special assessment districts, and those which are municipal corporations, citing *Pacific Gas & Electric Co. v. Sacramento Municipal Utility District,* 92 F. (2d) 365; *Browning v. Hooper,* 269 U. S. 396, 70 L. Ed. 330, 46 S. Ct. 141; *State ex rel. v. Thompson,* 315 Mo. 56, 285 S. W. 57.

Section 12, Art. XI, of the Oregon Constitution, above referred to, and chapter XXXIV, Oregon Code Supplement 1935, authorize the creation of municipal corporations, known as peoples' utility districts, with broad powers, designed to confer general benefits to the persons and lands within the boundaries of said districts, and these peoples' utility districts, contemplated by the organic and statutory law of Oregon, have the attributes of and fall in the same classification as other municipal corporations, such as cities, towns, school districts and port districts.

■ The legality of the law under consideration is to be determined by the laws applicable to municipal corporations and not by the laws applicable to special assessment or local improvement districts, which are formed with relatively restricted powers and for special

purposes designed primarily to confer special benefits to particular pieces of land within a district.

■ The criteria adopted by the courts in determining whether a specified public corporation is a municipal corporation designed to confer general benefits, as distinguished from a special assessment or a local improvement district designed to confer special benefits, are, first, whether the functions which the corporation is designed to perform are in their nature so interrelated with industry and general community development as to affect the property as well as the persons generally within the boundaries of the public corporation, effects which, although difficult to trace in detail, are none the less real. This is a fundamental criterion, and is considered at length in *Pacific Gas & Electric Co. v. Sacramento Municipal Utility District,* supra. The second criterion, whether the corporation was formed as a permanent public organization, or whether, by the terms of the statute, it is to be dissolved upon the performance of the special functions for which it was organized, is referred to in the case above cited, and in *Browning v. Hooper,* supra. The third criterion is whether a public corporation is empowered to levy a general tax and to issue bonds in a like manner as orthodox municipal corporations, or whether it is empowered to make special assessments only. This fact is illustrated in the case of *State ex rel. v. Thompson,* supra. In the latter case the court was called upon to pass upon the constitutionality of a statute empowering the county court of a particular county to establish road districts, without notice or hearing. The statute empowered the road districts thus created to levy a general tax. The Supreme Court of the United States, in *Embree v. Kansas City Road District,* 240 U. S. 242, 60 L. Ed. 624, 36 S. Ct. 317, had just previously held

that a companion Missouri statute empowering the county court to form road districts based upon special assessments, required for its validity provision for notice and hearing. The question then was whether a different rule should be applied to road districts empowered to levy a general tax, and the court so held, referring to the distinction between the two statutes, as follows:

"In the Embree case it was held that the statute was constitutional because it provided for a hearing for the property owners of the district upon the question whether their land would be benefited by the building of roads in the contemplated district, so that they might be assessed for special benefits. Embree v. Kansas City R. Dist., 240 U. S. loc. cit. 248, 249, 36 S. Ct. 317, 60 L. Ed. 624. It was indicated that if the statute had not accorded the landowners an opportunity to be heard, it would have been unconstitutional, but from the discussion of the matter it is plain that the necessity of a hearing was solely because the statute under which the road district was created provided for benefit assessments to pay the cost of building roads. It was said by the court (loc. cit. 248 (36 S. Ct. 319)) there was no doubt 'that the legislature intended to authorize and require the county court to adjust the boundaries so they would include only such lands as might be reasonably expected to be benefited by the improvement of the district roads and therefore might be properly charged with the cost of the work.' "

The court, in *Pacific Gas & Electric Co. v. Sacramento Municipality Utility District,* supra, in dealing with the question, said in part:

"The fallacy is apparent. The municipal district is a political organization of the human beings within its boundaries and is formed for rendering services to be made available to them. Its primary purpose is not to benefit any particular property. What benefit comes

to property is an incident to the use and enjoyment of the utilities each person may take or has the opportunity to take. Such human use and enjoyment, the primary purposes, have for their intermediate instruments the power plants and the right to issue bonds and to tax generally, but appellant puts the cart before the horse when it claims the ultimate function of the district is the mere ownership of the property in the plant or the mere right to issue bonds or to tax, and not the general personal betterment of its inhabitants.'' See Wight v. Police Jury, 264 F. 705; City of Pasadena v. Chamberlain, 204 Cal. 653, 269 P. 630.

The functions which the people's utility district in question is to perform is such as to affect persons and lands generally within the district, and the district, when created, is vested with broad powers to effectuate their purposes. Section 56-3429, Oregon Code Supplement 1935, provides:

''The peoples' utility districts herein provided for shall have power:

1. To have perpetual succession.
2. To adopt a seal and alter it at pleasure.
3. To sue and be sued, to plead and be impleaded.
4. To acquire and hold real and other property necessary or incident to the business of such districts, within or without, or partly within or partly without, the district, and to sell or dispose of such property; to acquire, develop, and/or otherwise provide for a supply of water for domestic and/or municipal purposes, water-power and electric energy; to distribute, sell and/or otherwise dispose of water, water-power and electric energy, within or without the territory of such districts.

\* \* \* \* \*''

Other and further powers are enumerated, among which is to exercise the power of eminent domain for the purpose of acquiring any power within or without

the district necessary to carry out the provisions of the act; to borrow money and incur indebtedness, to issue, sell and assume evidence of indebtedness. The district is empowered to levy general taxes. §§ 56-3429, subd. 7; 56-3434 and 56-3446. The latter section authorizes taxes to be levied on all property, real or personal, situated within the boundaries of the district and which is by law taxable for state and county purposes. This is in sharp contrast with the special assessment devices employed in special assessment or local improvement districts.

■ The conservation of water and power resources of the state for the benefit of the people is unquestionably a governmental function of great importance.

■ The intention of the framers of the constitutional and statutory provisions authorizing the creation of peoples' utility districts is manifestly that such districts shall be municipal corporations with wide powers to provide general benefits.

■ Laws providing for the creation of municipal corporations need not make provisions for hearings on boundaries and benefits in order to be valid. *In re Bonds of Orosi Public Utility Dist.*, 196 Cal. 43, 235 P. 1004. In the opinion in that case we find the following language:

"In view of the distinction, pointed out by this court (supra), between the acts providing for the formation, on the one hand, of public or quasi public corporations, in the nature of taxing districts, and of municipal corporations, on the other, and in view of the contention of the respondent, the problem which confronts us lies in determining whether or not the act under which the respondent district was created provides for the organization of a district which is in its nature a public corporation, the inhabitants and property owners of which are subject to taxation for municipal purposes

without any hearing as to the benefits to be derived from the creation and conduct of such a corporation, or is an assessment district created for the primary purpose of assessing upon private lands the benefits to be derived thereby from the public improvements for which purpose the district is formed.

\* \* \* \* \*

"Activities, once regarded as being of a strictly private nature, are now considered municipal affairs, e.g., the sale and distribution of electrical energy manufactured by a city, the supplying of water to its own inhabitants or to outside territory, the construction of a reservoir by a city on its own land and to be used for the benefit of its inhabitants, and the establishment and operation of transportation service."

To the same effect is the case of *Pacific Gas & Electric Co. v. Sacramento Municipal Utility Dist.*, 17 F. Supp. 685. In that case we find the following language:

"Under the law as enacted by the California Legislature, and under which the defendant district is organized, the plaintiff company has not been given, nor will it be given, any hearing as to whether its property will be benefited by its inclusion within the Sacramento Municipal Utility District. Taxes are about to be levied against the plaintiff in order to pay for bonds issued to finance the building of the defendant's electric plant. If these taxes are special taxes, assessed and collected by a special assessment district, it is agreed that the plaintiff is entitled to a hearing, and that none being provided for by the law, it is to that extent unconstitutional. It is likewise conceded that if these taxes sought to be imposed are general in nature, no hearing is necessary, and that the law under which the defendant is organized is valid.

"No case by the United States Supreme Court dealing with the constitutional questions pertaining to a utility such as this, is to be found. For that reason the ultimate characterization of these taxes is open to some doubt, but the court is satisfied that they are general."

■ The state or municipalities may levy general taxes to pay for utilities, even though the operation of such projects may not be a governmental function. *Jones v. Portland,* 245 U. S. 217, 38 S. Ct. 112, 62 L. Ed. 252, L. R. A. 1918C 765, Ann. Cas. 1918E 660; *Puget Sound P. & L. Co. v. Seattle,* 291 U. S. 619, 54 S. Ct. 542, 78 L. Ed. 1025.

In the case at bar, there is a marked distinction in the facts from those in *Browning v. Hooper,* supra, and *Oregon Short Line R. Co. v. Clark County Highway Dist.,* 17 F. (2d) 125. Those cases are not applicable to the instant case.

A utility such as the Tillamook People's Utility District is not a local improvement. See *Pacific Gas & Electric Co. v. Sacramento Municipal Utility Dist.,* supra; *Lehi City v. Meiling,* 87 Utah 237, 48 P. (2d) 530; *People v. Letford,* 102 Colo. 284, 79 P. (2d) 274; *City of Pasadena v. Chamberlain,* supra.

■ It is an established rule of statutory construction that a statute is presumed to be constitutional and that all doubt should be resolved in favor of its validity. See *Lehi City v. Meiling,* supra; *Straw v. Harris,* 54 Or. 424, 103 P. 777; *Starr v. Laundry Union,* 155 Or. 634, 63 P. (2d) 1104; *Anderson v. Thomas,* 144 Or. 572, 618, 26 P. (2d) 60; *City of Portland v. Welch,* 154 Or. 286, 294, 59 P. (2d) 228, 106 A. L. R. 1188.

If the constitutional and statutory provisions, authorizing the creation of the Tillamook People's Utility District, contemplated the creation of a special assessment district, rather than a municipal corporation, it is incumbent that the act under which said people's utility district is formed provides for a hearing on benefits and boundaries.

There was no error in overruling the demurrer and entering the decree.

██ Appellant argues that sections 6, 19 and 20 of the people's utility district law above quoted, while they provide for hearing before the Hydroelectric Commission as to what territory shall be included in said districts, the law does not provide that the sponsors of said proposed district are obligated to abide by the recommendations of said commission and the appellant concludes that the due process clauses of the state and federal constitutions are not satisfied by such hearings. It will be remembered that section 20 of the act provides if the commission in its final report shall recommend changes in the boundaries of the proposed district described in the preliminary petition, the sponsors of said preliminary petition *may*, in their final petition, change the boundaries of the proposed district to conform to such recommendation. This section further provides that, upon the filing of the final petition so modified, an election shall be called to determine whether such utility district shall be formed of the territory described in the final petition. There is no other way for the sponsors to proceed except to adopt the recommendation of the commission, and it is our opinion that the word "may" as used in the clause, "the sponsors of said preliminary petition *may*, in their final petition, change the boundaries of the proposed district," is used in a mandatory sense. The word "may" is ordinarily employed as implying permissive or discretionary action. It is also often used, as in the present instance, to imply mandatory action. See *Simpson v. Winegar,* 122 Or. 297, 300, 258 P. 562; *Smith v. King,* 14 Or. 10, 12 P. 8; *McLeod v. Scott,* 21 Or. 94, 26 P. 1061, 29 P. 1; *Hubner v. Hubner,* 67 Or. 557, 136 P. 667.

 Therefore, the owners of property and taxpayers within the limits of the proposed utility district

had an opportunity to protest against their property being included within the district or that their property would not be benefited, and an opportunity for hearing before the Hydroelectric Commission, of which they had due notice, and if the commission had found that any portion of the territory had been included in such proposed district that should not have been, it was its duty to recommend such changes in the boundaries of such proposed district as the commission deemed just and conducive to the public welfare, which "recommendations shall be included in its final report." (§ 56-3419, Oregon Code Supplement 1935.) The territory included in the utility district is not necessarily contiguous to other territory that is a part of the district; therefore, it would be competent for the commission to exclude any property where there was a protest and they deemed it proper not to include it in the district. The utility district law does not contravene the due process clauses of the state and federal constitutions or unlawfully delegate legislative power in violation of section 1, Art. III, and section 1, Art. IV, of the constitution of Oregon.

The construction we have given to sections 56-2701, et seq., Oregon Code 1930, relative to the incorporation of communities for water supply purposes, is supported by the decisions of this court. That act does not give the county commission any more authority to alter the boundaries of said districts than the Hydroelectric Commission has under the people's utility district law. This court came to the conclusion that the county commission had power to pass upon all matters concerning the validity of said water districts. *In re Rockaway Water Dist.*, 153 Or. 382, 55 P. (2d) 1107; *Smith v. Hurlburt*, 108 Or. 690, 217 P. 1093; *Hamilton v. Rudeen*, 112 Or. 268, 224 P. 92.

Appellant contends that the people's utility district law is unconstitutional on the further ground that the title of the act is not sufficiently broad to cover all of the subject matter contained in the body of the law. The title of the act reads thus: "Relating to and providing for peoples' utility districts and providing a penalty for violation of certain parts thereof." The subject of the act is contained in the title. It is not necessary that the title should be an index to every part of the act. Nothing is contained in the act except what is indicated by the title and matters which are germane thereto. See *State v. Allen,* 152 Or. 422, 429, 53 P. (2d) 1054, where the question is thoroughly discussed and which needs no amplification. See also *State v. Shaw,* 22 Or. 287, 289, 29 P. 1028, 1029.

Our conclusion is that the act under which the Tillamook People's Utility District was created provides for the formation of a public or quasi municipal corporation for municipal purposes only. The attack made on the constitutionality of the act must fall. The public utility districts provided for by the terms of the act have as their sole purpose the welfare and prosperity of the people of the district, matters which rest within the will of the people themselves.

The proceedings for the organization of the Tillamook People's Utility District were in conformity to the act providing for the creation and organization of such a district. Indeed, it would seem that the only way a municipality or quasi municipality, like the utility district under consideration, can be formed in the state of Oregon is under a general law, such as the People's Utility District Act. Art. XI, section 2, of the constitution of Oregon, provides that corporations shall be formed under general laws, but shall not be created by the legislative assembly by special laws, and that the

legal voters of every city and town are granted power to enact and amend their municipal charter.

◼ Under the constitution of the state of Oregon, the legislature may enact general laws providing for the organization of municipal corporations, or the creation and organization of utility districts, and it may provide the conditions under which such municipality or quasi municipality may be created and leave to some officer or official body the duty of determining whether the prescribed terms and conditions exist, and, when found to exist, the law directs the creation of the municipality or utility district.

The judgment and decree of the trial court sustaining the regularity and legality of the proceedings, in connection with the creation of the Tillamook People's Utility District, and the validity of the law under which said district was created, and approving all proceedings in connection with the ordinance subdividing the Tillamook People's Utility District, as being regular and legal, and that said district is now duly subdivided into five subdivisions in the ordinance, is in all things affirmed.

Neither party hereto will recover any costs and disbursements.

BELT and BAILEY, JJ., not sitting.