[No. 28370.   Department One.   July 30, 1941.]

THE STATE OF WASHINGTON, *on the Relation of John Panesko, as Prosecuting Attorney for Lewis County, Appellant,* v. PUBLIC UTILITY DISTRICT NO. 1 OF LEWIS COUNTY *et al., Respondents.*[1]

*Hull & Murray* and *C. D. Cunningham,* for appellant.

*Houghton, Cluck & Coughlin,* and *E. K. Murray* (*Herman E. Lafky,* of counsel), for respondents.

[1]Reported in 115 P. (2d) 692.

Driver, J.—This action, in the nature of *quo warranto,* was brought to test the validity of public utility district No. 1 of Lewis county. A trial to the court resulted in findings and judgment declaring the district to be "a municipal corporation duly and regularly organized pursuant to" the public utility district act, Laws of 1931, chapter 1, p. 3 (Rem. Rev. Stat., § 11605 [P. C. § 4498-11] *et seq.*). Plaintiff appealed.

The act provides for two types of districts. One, coextensive with the limits of the county, may be organized as follows:

"At any general election the board of county commissioners of any county in this state may, or on petition of ten (10%) per cent of the qualified electors of such county, based on the total vote cast in the last general county election, shall by resolution, submit to the voters of such county the proposition of creating a public utility district which shall be coextensive with the limits of such county as now or hereafter established." Rem. Rev. Stat., § 11607 [P. C. § 4498-13].

The other type of district has less area than the entire county. It is created in the manner prescribed in the following portion of the same section of the statute:

"Any petition for the formation of a public utility district may describe a less area than the entire county in which the petition is filed, the boundaries of which shall follow the then existing precinct boundaries and not divide any voting precinct; *and in the event that such a petition is filed the board of county commissioners shall fix a date for a hearing on such petition, and shall publish the petition, without the signatures thereto appended, for two weeks prior to the date of the hearing, together with a notice stating the time of the meeting when such petition will be heard.* . . . If upon the final hearing the board of county commissioners shall find that any lands have been unjustly or improperly included within the proposed public utility district and will not be benefited by inclusion therein,

the said board shall change and fix the boundary lines in such manner as it shall deem reasonable and just and conducive to the public welfare and convenience, and make and enter an order establishing and defining the boundary lines of the proposed public utility district: Provided, That no lands shall be included within the boundaries so fixed lying outside the boundaries described in the petition, except upon the written request of the owners of such lands. Thereafter the same procedure shall be followed as prescribed in this act for the formation of a public utility district including an entire county, except that the petition and election shall be confined solely to the lesser public utility district." (Italics ours.)

Section 12, p. 29 (Rem. Rev. Stat., § 11616 [P. C. § 4498-22]), the last section of the act, in part, directs that:

*"No public utility district created hereunder shall include therein any municipal corporation, or any part thereof, where such municipal corporation already owns or operates all the utilities herein authorized;* . . ." (Italics ours.)

It will be noted that the quoted statutory provisions, upon the construction of which our decision in the instant case depends, provide that there must be notice and hearing by the county commissioners on a petition for the establishment of a district of less area than the county, but, in the formation of a county-wide district, no such notice and hearing is required.

In the present case, the proceedings for the formation of the district were initiated by the county commissioners of Lewis county, acting on their own motion. They adopted a resolution directing the submission to the electors of the question of the formation of a district coextensive with the limits of the county, and the question was submitted at the general election of 1936. A majority voted to form the district, commissioners were elected, and the district

issued and sold utility revenue bonds and acquired and operated power lines and other properties for the sale and distribution of electric energy to customers. No notice of any hearing was given, nor was any hearing held by the board of county commissioners in connection with the organization of the district.

The trial court found that the city of Centralia, a municipal corporation situated in Lewis county, owned and operated all the utilities authorized by the public utility district act, and, by its judgment, declared the city to be excluded from the district by operation of law. Having elected to abandon their cross-appeal, the respondents are bound by such adjudication. *Langert v. David*, 14 Wash. 389, 44 Pac. 875; *Bremerton v. Bremerton Water & Power Co.*, 88 Wash. 362, 153 Pac. 372; *Adams v. Local No. 400 of Cooks etc.*, 124 Wash. 564, 215 Pac. 19; *Gilmore v. Gilmore*, 165 Wash. 492, 6 P. (2d) 69.

There remains for determination, then, only one question: Does the public utility district act require notice and hearing by the county commissioners in the establishment of a district coextensive with the limits of a county if the county in fact contains a municipality which owns and operates all the utilities authorized by the act?

The act has come before this court for construction many times. In *Royer v. Public Utility Dist. No. 1*, 186 Wash. 142, 56 P. (2d) 1302, its validity was questioned on the ground that, by authorizing the formation of a county-wide district without giving the property owners therein notice and an opportunity to be heard, it violated the due process clauses of the Federal and state constitutions. In that case we said, in effect, that the legislature, by the enactment of the statute, had established and fixed the boundaries of all those districts which include an entire county, and that,

when the question of the establishment of such a district was submitted to the electors, they merely determined if and when the district should become legally operative. We held that there was no delegation of legislative authority, that notice and hearing were not essential, and that the law was constitutional.

In *State ex rel. Washington Water Power Co. v. Superior Court*, 187 Wash. 309, 60 P. (2d) 263, commonly called the *Chewelah* case, the county commissioners of Stevens county adopted a resolution to submit to the voters the proposition of forming a public utility district coextensive with the limits of the county. A taxpayer, seeking to enjoin the election board from acting on the resolution, claimed that a county-wide district could not be legally organized, because the city of Chewelah, situated in the county, had all the authorized utilities. We affirmed the lower court's judgment dismissing the action. We stated that, "in our opinion," the weight of the testimony was in favor of the defendant's contention that Chewelah did not own or operate all the authorized utilities, and then added:

"Still further, however, the act provides for two kinds of districts, territorially: One, coextensive with the county; the other, of less area than the county. The first kind is created by the act of the legislature; the other, by petition of the electors fixing the boundaries in their petition. Section 12, p. 29, of the act [excluding municipalities having all the utilities] is, of course, the language of the legislature, and contains nothing inconsistent with the idea that the author of that language may itself create a public utility district coextensive with the county and bring it into operation by a majority vote of the electors of the county. Such was the holding in our recent cases hereinbefore mentioned [the *Royer* case, *supra,* and a *per curiam* decision based upon it]. That is the procedure being followed in this case."

The appellants in the instant case say that the foregoing quotation from the *Chewelah* case is dictum. The conclusion which it implies does not seem to have been necessary to the decision of that case, since a factual finding that Chewelah did not have all the utilities was fully determinative. In any event, however, the excerpt was quoted with approval and its reasoning was adopted in *Hillier v. Public Utility Dist. No. 3,* 188 Wash. 602, 63 P. (2d) 392, a case which we think controls this one.

In the *Hillier* case, the requisite number of taxpayers had petitioned the county commissioners for the formation of a public utility district embracing part of Mason county. Thereafter, a petition for the organization of a county-wide district also was presented to the commissioners. The two propositions were submitted to the voters at the same election, and both of them carried. Suits were brought (later consolidated for trial) to enjoin the levy of taxes by the larger district. It was held that, while the smaller district, by virtue of § 12 of the public utility district act, was excluded from the larger one, and, although, in the creation of the latter, there had been no notice or hearing, both had been validly organized. The court quoted from the *Chewelah* case the same excerpt hereinabove set forth, and then offered this comment:

"In other words, the act itself defines county-wide districts and fixes their boundaries as the county boundaries, even though there may be, within these boundaries, cities or small utility districts operating all or some of the utilities authorized. *The opinion implied that, even if the city of Chewelah were operating all of the utilities, so as to exclude it from the jurisdiction of the county-wide district, the district would, nevertheless, be one of legislative creation, not requiring a preliminary hearing.*

"All of the counties of the state have within their limits cities authorized to operate, and many of them

in fact operating, all the utilities covered by the act. To hold that a county-wide district could not be organized in any county having a city furnishing water and electricity would, in a large measure, defeat the purpose of the act. If the existence of the city type of municipal corporation does not prevent the organization of a county-wide district, we can see no reason for holding that the existence of a smaller utility district destroys the right to organize a larger district." (Italics ours.)

Appellant attempts, unsuccessfully we think, to distinguish the *Hillier* case. Specifically, the appellant points out, in that case, the two districts were authorized at the same election and, hence, at the same time, while, in the instant case, Centralia was an existing municipality before the proceedings to form the county-wide district were initiated. We do not think the difference is important. In the *Hillier* case, when the proposition of creating a county-wide district was submitted to the electors, no one knew whether or not it would ultimately embrace all the area of the county. That depended upon the result of the election on the formation of the smaller district. Likewise, in the present case, it was uncertain whether the proposed district would include the entire county. It depended upon whether Centralia or some other municipality in the county owned or operated all the utilities authorized by the statute, a fact which had not been authoritatively determined at the time of the election. The *Hillier* case appears to hold that a utility district co-extensive with the limits of a county is valid when the election for its formation is held without notice or hearing by the board of county commissioners, even though there is excluded from it a smaller district in the same county. So regarded, we think that case is controlling here.

Appellant maintains that the Lewis county public

utility district was not lawfully organized, because the inhabitants of the city of Centralia were permitted to vote on the question of its formation. That circumstance is not material, however, because it did not affect the result of the election. According to the findings of the trial court, a majority of the electors of the county, exclusive of those residing in Centralia, voted in favor of the creation of the district.

The public utility district statute does not specifically require any notice and hearing by the county commissioners in the formation of a district under the circumstances of the instant case, nor do we think it does so by necessary implication. In the case of a petition for the creation of a district of less area than the county, where the petitioners themselves, at their discretion, fix the boundaries of the proposed district, the statute logically requires a hearing. Manifestly, its purpose is to enable the county commissioners to fix suitable boundary lines after determining whether "any lands have been unjustly or improperly included" and "will not be benefited by inclusion." The commissioners may also extend the boundaries to include additional lands, but only "upon the written request of the owners of such lands." The statute cannot, however, without resort to strained and illogical construction, be interpreted to require notice and hearing in the formation of a district initiated as one coextensive with the limits of a county. Although there is at least one municipality in every county of the state, no procedure is prescribed and no method is provided for a board of county commissioners to inquire into the facts and determine whether or not a municipality owns or operates all the utilities authorized by the act. Moreover, such a board has no authority to make an effectual or binding determination of that question.

If a municipality does not have all the utilities, the board is not authorized to exclude it from a district

commenced as a county-wide one. On the other hand, if a municipality does have all the utilities, it seems clear that the commissioners cannot include it in any district. It is difficult to conceive any useful purpose a hearing, in the formation of a county-wide district, could serve.

The respondent public utility district No. 1 of Lewis county, as the trial court found, was regularly and lawfully organized, and the judgment is affirmed.

MILLARD, MAIN, and BLAKE, JJ., concur.

STEINERT, J. (dissenting)—Public utility district No. 1 of Lewis county is of less area than the entire county. In the formation of a district of limited area, the statute demands that it be by petition, of which notice must be published, and on which a hearing must be had. Rem. Rev. Stat., § 11607. That procedure was not followed in this instance. No opportunity for protest by interested persons was afforded. The electors of the county were not informed that the city of Centralia could not, and would not, be included in the district. To the contrary, they had the right to assume that the city would be included because the proposition which was submitted to the voters by the county commissioners was for the formation of a district *coextensive with the limits of the county*. Had the voters residing in the county outside of Centralia known that the city was not to be included and that the property within the city would not be taxed to help maintain the public utility district, the vote might have been entirely different. At any rate, the voters should have been allowed to express their voice upon a proposition formulated to represent the true facts, and not have been beguiled into voting for a proposition that was at variance with what the situation now actually is.

I dissent.