[No. 11903. *En Banc.* April 15, 1914.]

E. M. RANDS, *Appellant*, v. CLARKE COUNTY *et al.*, *Respondents.*[1]

CONSTITUTIONAL LAW—LOAN OF CREDIT—COUNTY AID TO MUNICIPAL CORPORATION. The issuance of county bonds for part of the cost of an interstate bridge, to be built jointly with a county in the adjoining state, is not a giving or loaning of money or credit in aid of "any individual, association, company or corporation" in violation of Const., art. 8, § 7; since the provision does not apply to a county or a corporation whose functions are wholly public.

SAME—LOAN OF CREDIT—JOINT CONSTRUCTION OF INTERSTATE BRIDGE. The issuance of county bonds for part of the cost of an

[1]Reported in 139 Pac. 1090.

interstate bridge, to be built jointly with a county in the adjoining state, which was to supply the balance of the cost, is not a giving or loaning of money or credit, in violation of Const., art. 8, § 7; since the county retains an interest in the bridge and no more aids the foreign county than it receives aid therefrom.

COUNTIES—BONDS—SUBMISSION TO ELECTORS—NOTICE OF ELECTION —SUFFICIENCY. Requirements for notice of a special county bond election are directory only, where the statute does not provide that the election shall be void if not strictly followed; and the publication of notice of election for only 25 or 26 days, where the act requires publication for four weeks next preceding the date of election, does not invalidate the election, where the subject was widely discussed, numerous public meetings were held and the matter given great notoriety, and the voters fully informed, and a heavy vote cast, and the result could not have been different if legal notice had been given.

SAME — BONDS — SUBMISSION TO ELECTORS — BALLOTS. A special county bond election is not invalidated by printing on the ballot explanatory matter in addition to the matter required by statute.

SAME—BONDS—RATE OF INTEREST. A statute authorizing the issuance of county bonds bearing interest at a rate not exceeding six per cent per annum, payable semiannually, is sufficiently complied with by the issuance of bonds bearing interest at the rate of six per cent payable annually.

BRIDGES—CONSTRUCTION—AUTHORITY TO MAKE CONTRACT. The provisions of Rem. & Bal. Code, § 5686-1 et seq., which gives the state the management and control, through its highway board, of the construction of interstate bridges, where the state itself joins in the construction of the bridge, are not intended to apply to an interstate bridge constructed by a county of this state jointly with a county of an adjoining state.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered March 7, 1913, upon findings in favor of the defendants, dismissing an action for equitable relief. Affirmed.

*Donald McMaster*, for appellant.

*Bates & Burnett* and *Miller, Crass & Wilkinson*, for respondents.

FULLERTON, J.—The legislature of the state of Washington, at the biennial session of 1913, passed an act (Laws

1913, p. 168; 3 Rem. & Bal. Code, § 5686-1), empowering the state of Washington, or any county, city or town therein, "to jointly or separately join with any adjoining state, county, city or town in the purchase, construction, control, operation and maintenance of any bridge or bridges over and across any river, stream or body of water being within or constituting the boundary line of the state or any county therein." Section 6 (Id., § 5686-6) of the act provided that, whenever the board of county commissioners of any county shall deem it for the interest of such county to engage in or aid in the construction of a bridge under the provisions of the act, and to incur an indebtedness to meet the cost thereof and the expenses connected therewith and issue bonds of the county for the payment of such indebtedness, such county is authorized and empowered, by and through its board of county commissioners, to engage in or aid in such work, and to incur an indebtedness for such purpose to an amount which, together with the then existing indebtedness of such county, shall not exceed five per centum of the taxable value of the taxable property of such county, as shown by the last preceding assessment roll thereof for state and county purposes, and to issue negotiable bonds of the county for such indebtedness; provided that the commissioners shall have first submitted the question of incurring such indebtedness to the voters of the county, at a general or special election, and three-fifths of the voters voting upon the question shall have voted in favor of incurring the same. Section 11 of the act reads as follows:

"That whenever it is deemed advisable by the common council of any city or town and the county commissioners of any county in this state to purchase or construct a bridge within or partly within such city or town, the council and commissioners are authorized and empowered to enter into an agreement for the construction of such bridge, upon such terms as may be mutually agreed upon, each contributing such sum towards the purchase or construction of the same as may be determined to be just and proper, and enter into

contract for the construction of such bridge and to spend public funds thereon, and if deemed necessary may bond the county or city or town in the manner herein specified. The contracts for letting the same and notice given to bidders, and all other matters pertaining to the construction shall be governed by the laws in force governing the construction of bridges by county commissioners in the state of Washington, provided the payments to be made on the contract by the respective municipal corporations be made direct to the contractor." (3 Rem. & Bal. Code, § 5686-11.)

The laws in force governing the construction of bridges by county commissioners referred to in the section quoted, in so far as they are pertinent to the inquiry, empower such board to enter into contracts for the construction of such bridges in behalf of the county, and to superintend and control the construction thereof, as if the matter were the business solely of the county disconnected entirely from state business.

Acting in pursuance of the powers granted in the statute cited, the board of county commissioners of Clarke county, Washington, on July 9, 1913, adopted a resolution in which it was recited that the board deemed it for the interests of Clarke county that it, together with the city of Vancouver, join with the county of Multnomah, in the state of Oregon, in the construction of an interstate toll bridge across the Columbia river, which formed the boundary line between the two counties, and that Clarke county should incur a bonded indebtedness in the sum of $500,000 to meet the cost thereof and the expenses connected therewith. The board thereupon ordered that the question whether or not such indebtedness should be incurred be submitted to voters of the county at a special election called for August 12, 1913, and directed that the notice thereof be given in the manner required by law. Notice was given and an election held on the day named in the resolution, at which more than three-fifths of the legal voters voting thereat favored the incurring of the indebtedness for the purposes expressed in the resolution.

· Thereafter the board of county commissioners entered into negotiations with the proper officers of the county of Multnomah, in the state of Oregon, and reached a tentative agreement for the construction of a bridge across the Columbia river, extending southerly from a point in the southern boundary of the city of Vancouver to a point on the Oregon shore; such bridge to cost approximately $1,250,000, of which sum Clarke county is to contribute $500,000, and Multnomah the balance of the total cost. Before any such bonds were issued, however, and before any contract for the construction of the bridge ·was entered into, the present action was begun by the appellant, who is a resident and taxpayer of Clarke county, to enjoin the board from issuing the bonds, and from entering into any contract for the construction of the bridge. The complaint is based on the contentions that the proposed bond issue is illegal because proposed to be issued for a purpose prohibited by the constitution, and because of defects and irregularities in the proceedings leading up to the issuance; and that the board of county commissioners are without power to enter into a contract for the construction of the bridge because the act of the legislature under which they are proceeding vests such power solely in the state highway board, even where the county of itself, without the aid of the state, creates the fund necessary for the construction of the bridge. At the trial the lower court ruled against the contentions of the complainant, and entered a judgment to the effect that he take nothing by his action. This appeal followed.

Article 8, § 7, of the state constitution, provides:

"No county, city, town, or other municipal corporation shall hereafter give any money or property, or loan·its money or credit, to or in aid of any individual, association, company, or corporation, except for .the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company, or corporation."

It is argued by the appellant that, since the bridge is to be built in conjunction with the county of Multnomah, in the state of Oregon, that municipal corporation will be aided by the money applied by Clarke county to the construction of the bridge, and the proposed act of the county commissioners is thus within the prohibition of the constitution quoted. But it will be noticed that the prohibition is against the giving or loaning of money to or in aid of any individual, association, company or corporation, and it is clear that, unless the word, "corporation" can be held to include a county in a foreign state, the county of Multnomah is not included within the prohibition. We think the word cannot be held to have this meaning. Plainly by the terms which precede it, the framers had in mind individuals, associations, companies and corporations engaged in purely private enterprises, or enterprises only quasi public, not to enterprises carried on by the corporations whose functions are wholly public, such as the Federal or state government, or some branch thereof. This we determined in *Lancey v. King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817, where we held that King county could appropriate money in the aid of a ship canal proposed to be constructed in that county; in *State ex rel. School Dist. No. 24 v. Grimes*, 7 Wash. 270, 34 Pac. 836, where we held that this provision of the constitution did not prohibit the state from investing the irreducible school fund in bonds of school districts; and perhaps in *Paine v. Port of Seattle*, 70 Wash. 294, 126 Pac. 628, 127 Pac. 580, where we held that the public nature of an improvement was not destroyed because it was the purpose to let to private individuals for a limited time a part of the improvements when constructed.

The appellant cites, as holding contrary to the principle here announced, the case of *State ex rel. Potter v. King County*, 45 Wash. 519, 88 Pac. 935. The syllabus of that case does support the contention, but it will be observed from an examination of the opinion itself that the syllabus does not

accurately reflect the decision. The court did not there rest its decision, as the syllabus recites, on the principle that the county of King was forbidden by the section of the constitution in question from issuing negotiable bonds to aid the United States in building a ship canal in that county, but held that it could not do so in the absence of a specific grant of power from the legislature authorizing it to do so, and that there was then in the statutes no such specific grant. This is made clear from the whole tenor of the opinion, and particularly from the following language used therein:

"If the argument of the respondents is sound, the several boards of the county commissioners in this state have now all the power that the legislature can constitutionally confer upon them in the matter of determining the objects and purposes for which public money may be expended. With such a contention we cannot agree. The most favorable view that can be taken of the bonds in question, from the standpoint of the respondents, is that they are bonds in aid of the Federal government, for if they are not, they are manifestly in aid of a private individual and utterly void. If in aid of the Federal government, they may be free from constitutional objection, under the decision in the *Lancey* case, but they are none the less aid bonds, and, as such, are extraneous to the general objects and purposes for which county governments are created. If any question can be settled by a long line of judicial decisions, State and Federal, it is the proposition that power to issue bonds in aid of internal improvements cannot be inferred or implied from any general grant of power to counties or other municipalities."

But we think the rule may rest on narrower grounds. The county of Clarke is not proposing to issue bonds in aid of the construction of a bridge by the county of Multnomah. Its purpose is to join with that county in the construction of a bridge, and it will retain an interest therein proportionate to the amount of money it contributes therefor. It is thus no more aiding Multnomah county in the construction of the bridge than Multnomah county is aiding it, and this clearly cannot be said to be giving its money "to or in aid of any

individual, association, company, or corporation," such as is contemplated by this section of the constitution.

The statute governing the giving of notice for special elections, held under the provision of the act under which the commissioners proceeded, provides that such notice must be given by publication in some newspaper having a general circulation in the county in which the election is proposed to be held "for a period of at least four (4) weeks next preceding the date of the election." In this instance the notice was directed to be given in two newspapers having a general circulation in Clarke county. In one, the first publication of the notice was made on July 17, 1913, while in the other it was made on July 18, 1913, in each of which the notice was published weekly in four successive issues of the paper. Since the election was held on August 12, 1913, it will be observed that the first publication was made only twenty-six days prior to the election, and in the other only twenty-five days prior thereto. This, it is claimed, renders the election and all subsequent acts founded thereon invalid. This court, however, early held that requirements of a statute providing for the giving of notices of an election, either general or special, were directory rather than mandatory, unless the statute itself declares that the election shall be void if the statutory requirements are not strictly observed, or the court can see from the record that the result of the election might have been different had there been a strict compliance with the statutory requirements. *Seymour v. Tacoma*, 6 Wash. 427, 33 Pac. 1059; *Richards v. Klickitat County*, 13 Wash. 509, 43 Pac. 647; *State ex rel. Mullen v. Doherty*, 16 Wash. 382, 47 Pac. 958, 58 Am. St. 39; *Hesseltine v. Wilbur*, 29 Wash. 407, 69 Pac. 1094; *Murphy v. Spokane*, 64 Wash. 681, 117 Pac. 476; *Hill v. Howell*, 70 Wash. 603, 127 Pac. 211. In *State ex rel. Mullen v. Doherty*, Judge Gordon, delivering the opinion of the court, used this language:

"The rule established by an almost unbroken current of authority is that the particular form and manner pointed out

by the statute for giving notice is not essential, and where the great body of the electors have actual notice of the time and place of holding the election, and of the questions submitted, this is sufficient. The vital and essential question in all cases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election."

In this instance, it is conceded that there is no statutory provision declaring the election void if the statutory notice be not given; nor are we able to discover from the record that the result of the election might have been different had notice thereof been given in the strictest compliance with the statute. On the contrary, it appears that the object and purpose of the election, as well as the time and places at which the election was to be held, were given the widest publicity. The court found:

"That for several months next preceding the date of said special bond election of August 12, 1913, and the date of the meeting of the board of county commissioners on the 9th day of July, 1913, the question of whether the county should be bonded in the sum of $500,000 for the purpose of joining and aiding in the construction of an interstate bridge at Vancouver, Washington, over the Columbia river at that point was widely discussed by the people of southwestern Washington, and especially the electors and citizens of Clarke county, Washington, and during said time and immediately preceding the meeting of the board of July 9, 1913, and between that date and the date of the special election of August 12, 1913, numerous meetings were held throughout Clarke county, where the matter was generally and publicly discussed by the residents and voters of the county, and that prior to the meeting of the board on July 9, 1913, to wit: on the 27th day of April, 1913, a public meeting was held in the superior court room of the court house at Vancouver, Washington, to which the people and electors from all portions of the county were invited to attend for the purpose of discussing the question of whether the county should join in the construction of such bridge and incur an indebtedness necessary to construct the bridge; that at said

meeting hundreds of voters were present from the various portions of the county and the matter was widely advertised and discussed; that a resolution was passed at said meeting favoring the construction of the bridge and the incurring of the indebtedness; that the resolution of said meeting was published in the newspapers throughout the county and generally circulated among the electors of the county. That for months previous to said July 9, 1913, and next preceding the date of the election of August 12, 1913, the daily and weekly papers which circulate through the county and among the residents and electors of the county, contained numerous and repeated references to the proposed construction of the bridge and the bonding of the county, and the widest publicity and notoriety was given to the proposed construction and proposed bond issue; that on the 9th day of July, 1913, the date of the meeting of the board of county commissioners, the Daily Vancouver Columbian, a daily paper published in said county and circulated among the electors of said county, contained an account of the meeting of the board of commissioners and was published in large letters on the front page of the paper the announcement that the special bond election for the purpose of the construction of the bridge at Vancouver, Washington, would be held on the 12th day of August, 1913; and the Weekly Vancouver Columbian of the issue of July 10, 1913, and the weekly Clarke County Sun, published on Friday, the 11th day of July, 1913, and the Portland daily papers which circulate extensively throughout Clarke county, contained extended reference to the bridge matter and the voting of the bonds, and thereafter these papers contained almost daily and repeated reference to the proposed bond election and the construction of the bridge, and all of the papers mentioned were circulated extensively throughout the county and among the residents and electors of the county, and for weeks and months next preceding the date of the special election of August 12, 1913, meetings were held in the several precincts throughout the county where numerous electors and citizens were present and the proposed bond issue was thoroughly and fully discussed, and the proposed bond issue and construction of the bridge was discussed by the people generally in their home, from the platform, and the electors were fully informed of the said special bond election and the purposes and objects of the election and the

6—79 WASH.

proposed bond issue was a matter of public notoriety through-out the county, and the great body of electors of the county had actual notice of the time and place of holding the election; that the electors of the county generally participated in the election; that there was a total vote cast at said special election of 6197, of which 5393 were in favor of the issue and 804 against it; that the total vote of the county as ascertained at the last general election in November, 1912, for the election of county and state officers and presidential electors was 8359."

Under these circumstances, it cannot be said, with any show of reason, that any elector of Clarke county was denied the privilege of voting at the election for want of sufficient notice, or that the result of the election would have been different had the official notice of the election been published two or three days earlier than it was actually published. We conclude, therefore, that there is no cause for holding the election invalid on the ground here suggested.

The ballot used at the election contained explanatory matter in addition to the matters required by the statute. It is suggested that this is fatal to the election, but we met and determined the question, contrary to the suggestion, in the case of *Paine v. Port of Seattle*, 70 Wash. 294, 126 Pac. 628, 127 Pac. 580. As we are satisfied with the rule there announced, we do not feel called upon to discuss the matter further.

The resolution calling for the bond election, passed by the board of county commissioners, and the notices given of such election, described the bonds proposed to be issued as bonds bearing interest at the rate of six per cent per annum, payable annually. The statute authorizing the issuance of such bonds provides that they shall "bear interest at a rate not exceeding six per cent per annum, payable semi-annually." Manifestly, it was the legislative intent, by this provision of the statute, to limit the rate of interest for which bonds could be lawfully issued, not to fix a hard and fast rule as to the character of bonds that could be issued. Bonds which

do not exceed the statutory rate of interest are therefore lawful, notwithstanding the interest thereon may be made payable annually instead of semi-annually. *Borner v. Prescott*, 150 Wis. 197, 136 N. W. 552.

Lastly, it is argued that the commissioners are without power in themselves to enter into a contract for the construction of the bridge; that this power is vested by the statute in the state highway board and state highway commissioner, notwithstanding the bridge is constructed for a county purpose, and the county is furnishing the means for its construction.

The particular provisions of the statute under which the county commissioners are proceeding we have hereinbefore epitomized. Standing alone, they justify the procedure adopted by the county. The act, however, contains many sections seemingly contraditory of those set forth, which the appellant cites and relies upon in support of his argument. We think, however, that a careful study of the act will show that it has a multiple purpose. It provides for the construction of bridges in which the state alone, or the state in conjunction with one or more counties, cities or towns, joins with an adjoining state, or some subdivision thereof, in the construction of an interstate bridge, as well as providing for the joining of a single county with such adjoining state, or subdivision thereof, in such construction. In all cases where the state does so join with an adjoining state or some subdivision thereof in the construction of a bridge of the character mentioned, whether alone or with a county, city, or town, the state is given the management and control of the enterprise through its highway board, and the special provisions of the statute cited by the appellant undoubtedly apply. But, without reviewing them at length, we think they have no application to a case where, as in the present instance, the enterprise is undertaken by a county and city without the aid of the state; that, in such cases, the county itself may control and expend the fund raised for the purpose, and may

lawfully enter into all necessary contracts to carry the enterprise into effect.

The foregoing conclusions require an affirmance of the judgment, and an affirmance is ordered.

PARKER, MORRIS, MAIN, MOUNT, ELLIS, and GOSE, JJ., concur.