[No. 13197.   *En Banc.*   December 15, 1915.]

NEW SEATTLE CHAMBER OF COMMERCE, *Respondent*, v. THE
CITY OF SEATTLE *et al.*, *Appellants.*[1]

MUNICIPAL CORPORATIONS—LEGISLATIVE POWERS—LEVY OF TAX—
ORDINANCE—NECESSITY. Rem. & Bal. Code, § 9281, and 3 Id., § 7493-1,
having delegated to cities of the first class the right to levy taxes
without providing how or in what manner the power is to be ex-
ercised, recourse must be had to the provisions of the city charter;
and Seattle Charter, art. 4, § 18, having expressly provided that the
city council shall have power "by ordinance and not otherwise" to
provide for the assessing, levying and collecting of taxes, a tax levy
cannot be authorized by resolution, and is subject to the veto power
of the mayor; especially in view of 3 Id., § 7493-1, providing that the
manner and mode in which cities of the first class shall exercise the
powers which are or may be given them by law shall be as provided
in their charters.

SAME—TAX LEVY—TIME—STATUTES. The provisions of a statute
as to the time within which a city tax levy must be made are de-
claratory, and failure to strictly comply therewith does not deprive
the city of the right to make a levy after the time has expired.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered November 9, 1915, in favor
of the plaintiff, upon overruling a demurrer to the complaint,
in an action to enjoin the collection of a tax, tried to the
court. Affirmed.

*James E. Bradford, Ralph S. Pierce*, and *William B. Alli-
son*, for appellants.

*Hughes, McMicken, Dovell & Ramsey*, for respondent.

MORRIS, C. J.—The sole question presented by this appeal
is whether the city of Seattle can initiate a tax levy by reso-
lution of the city council without the intervention of the
mayor, or must such levy be made by ordinance and thus be
subject to the veto power of the mayor.

An engaging and interesting argument is made, both in
the briefs and in the oral presentation here, as to the status

[1]Reported in 153 Pac. 351.

of cities of the first class under our constitution, and the powers delegated under the constitution, enabling act, and various subsequent legislative acts. The conclusion reached by the majority of the court, however, does not call for a discussion of these questions, and we confidently rest our decision upon one point which, to our minds, is decisive of the appeal.

We may assume, as held in various decisions of this court, that cities of the first class are, by virtue of the constitution, permitted to frame a charter and exercise their own government, except in so far as such attempted exercise is in conflict with the constitution and laws of the state. We are to determine then, does the provision of § 18, art. 4 of the charter of the city of Seattle, providing that "The city council shall have power by ordinance and not otherwise . . . to provide for the assessing, levying and collecting taxes on real and personal property," conflict with any constitutional or statutory provision of this state. It is not contended that any conflict is found in the constitution, so a review of its provisions may be eliminated.

In 1893, the legislature passed an act (Rem. & Bal. Code, § 9281), providing, among other things, that

"The city council of each city of the first class . . . shall by ordinance in each year fix the rate of taxes to be levied and levy the taxes upon all taxable property, both real and personal, in such city."

In 1909, the legislature passed the so-called "budget law," which provided that, on or before the first Monday in September in each year, the city council shall make an itemized estimate of the amount required to meet municipal expenses for the ensuing year, to publish such estimate, and on the first Monday in October, after public hearing, determine the amount of taxes to be levied. This act was amended in 1915 by dividing the different municipal corporations of the state into taxing districts, and providing that the "governing officials" of such taxing district shall prepare and adopt a

budget for the respective taxing districts for the ensuing year. The act defines "governing officials" as "city or town councils."

It will be noted from an examination of these various statutory provisions that, in so far as the power to levy a tax is delegated to city councils, it is a mere naked delegation of power. None of these legislative acts, nor any other known to our law, provide how or in what manner this power shall be exercised. None of them, nor any other legislative provision, goes farther than a designation of the body in which the power is to rest. How then, or in what manner, is this power to be exercised? Manifestly, finding no direction in any statutory provision, there can be but one answer to the question, and that is, the exercise of the power is to be determined by reference to the charter provisions as to the mode in which the city council may exercise its powers. If the charter was silent and neither expressly nor by reasonable implication required the act of the city council to be in any particular form, then undoubtedly, under the general rule as laid down in Dillon on Municipal Corporations (5th ed.), § 572, the decision of the city council need not be by ordinance, but might be evidenced by a resolution. But the charter is not silent. Its language is express and specific in the provisions of § 18, previously quoted.

In *McGill v. Hedges*, 62 Wash. 274, 113 Pac. 635, we held that, where there was no conflict between the charter of the city of Everett and any statutory provision as to the rate of a tax levy, the charter provision would control. It will not be denied that the levying of a tax is an exercise of legislative power. Cooley, Taxation (3d ed.), § 546. Section 10 of art. 4 of the charter of the city of Seattle provides that "every legislative act of said city shall be by ordinance."

These reasons force us to the conclusion that the delegation of power being silent as to the manner of its exercise, we must have recourse to those provisions of the city charter which conflict with no statutory provisions to determine the

manner of exercise, and having found it, we need look no fur-
ther for a determinative rule upon which to base our con-
clusion.   These views do not conflict with those expressed in
*Benton v. Seattle Elec. Co.*, 50 Wash. 156, 96 Pac. 1033;
*Ewing v. Seattle,* 55 Wash. 229, 104 Pac. 259, and *Dolan v.
Puget Sound Traction, Light & Power Co.*, 72 Wash. 343,
130 Pac. 353, relied upon by the city as supporting its con-
tention.   In those cases we were determining to whom the
power was delegated, and not the manner of its exercise.

We are not, however, without legislative authority declara-
tory of our position, for we find this language in ch. 17 of
the Laws of 1911, p. 54, an act relating to organization and
powers of cities of the first class.

"The form of the organization and the manner and mode
in which cities of the first class shall exercise the powers,
functions and duties which are or may be given by law to
such cities, with respect to their own government shall be as
provided in the charters thereof."   3 Rem. & Bal. Code,
§ 7493-1.

A subsequent section extends the application of this act
to city charters previously adopted.

It might be added, inasmuch as the time of making the levy
has now expired, that the provisions as to the time within
which a tax levy may be made are merely declaratory, and
failure to strictly comply therewith would not deprive the
city of the right to make its levy.   *Wingate v. Ketner,* 8
Wash. 94, 35 Pac. 591.

The judgment is affirmed, and the court having fully heard
and determined the questions submitted by this appeal, it is
ordered that the remittitur go down forthwith.

Holcomb, Chadwick, Main, Ellis, Fullerton, Parker,
and Bausman, JJ., concur.