[No. 26249. Department One. December 16, 1936.]

A. E. HILLIER *et al., Respondents,* v. PUBLIC UTILITY DISTRICT No. 3 *et al., Appellants.*[1]

*Yantis & Brodie,* for appellants.

*J. W. Graham,* for respondents.

GERAGHTY, J.—This appeal is from a decree of the superior court enjoining the appellants, officers of public utility district No. 3, Mason county, from levying, and the county treasurer (ex-officio assessor) from spreading upon the tax rolls, taxes for utility district purposes for the year 1936.

[1]Reported in 63 P. (2d) 392.

The questions raised call for the construction of certain provisions of the Grange power act, so called, adopted by the electors at the 1930 general election. Chapter 1, Laws of 1931, p. 3 (Rem. Rev. Stat., § 11605 [P. C. § 4498-11] *et seq.*).

By § 3 of the act (Rem. Rev. Stat., § 11607 [P. C. § 4498-13]), two types of districts are authorized: First, districts coextensive with the limits of the county; and second, districts embracing lesser areas than a whole county. County-wide districts are to be initiated by the petition of ten per cent of the qualified electors of the county. As to such districts, no preliminary hearing, on the question of benefits, for the purpose of fixing the district boundaries is required, but the county commissioners are directed, upon the certification of the county auditor that a petition contains the requisite number of signatures of qualified electors, to transmit the proposition to the county election board for submission to the voters at the next general election. In *Royer v. Public Utility Dist. No. 1,* 186 Wash. 142, 56 P. (2d) 1302, we held that the failure to provide for a hearing did not render the act vulnerable to constitutional objection, since the boundaries of county-wide districts are fixed by the legislation itself.

Section 3 also provides that a petition for the formation of a public utility district may prescribe a less area than the entire county, and, upon the filing of such a petition and the certification by the county auditor that it contains the requisite number of signatures, the board of county commissioners is required to hold a hearing upon notice. If, at this hearing, the board shall find that any lands have been unjustly or improperly included within the proposed district and will not be benefited by inclusion therein, the board shall change and fix the boundary lines in such manner

as it shall deem reasonable and just and conducive to public welfare and convenience, and make and enter an order establishing the boundary lines of the proposed district. Thereafter, the procedure prescribed for the formation of county-wide districts is to be followed, "except that the petition and election shall be confined solely to the lesser public utility district."

December 17, 1930, a petition was filed with the board of county commissioners of Mason county requesting the organization of a public utility district to embrace a limited number of voting precincts in the county adjacent to Hoodsport. By reason of delay caused by the institution of legal proceedings, the question of the formation of this district was not submitted to the voters until the 1934 general election.

On July 2, 1934, a petition, signed by the requisite number of electors, was filed with the county officers, requesting the formation of a county-wide utility district in Mason county, designated in the record as district No. 3. While this petition was pending before the county commissioners, a suit was instituted in the superior court of Mason county by a resident and taxpayer of that county against the members of the board of county commissioners and election board, to enjoin its submission to the electors. A demurrer to the complaint having been overruled, and the defendants having declined to plead further, judgment was entered enjoining submission of the proposal. The judgment of the superior court was reviewed and reversed in this court on certiorari. No opinion was filed, but the order of reversal, embodied in the remittitur, recited that it was entered

". . . without prejudice to the right of any party or persons, at some future date, to raise any question concerning the subject matter of this litigation, save the question of the submission of the proposition to the electors of Mason county at the general

election to be held November 6, 1934." (State ex rel. Webb v. Superior Court, No. 25394.)

The proposition for the formation of county-wide district No. 3 was, accordingly, submitted to the electors on November 6, 1934, together with the proposition to form utility district No. 1, the smaller district. Both propositions were adopted at the election, and the districts were subsequently organized.

In 1935, the commissioners of district No. 3 proceeded to prepare a budget for the year 1936 and to levy taxes on the property in the district, in accordance with the provisions of the act authorizing a tax levy of not exceeding two mills for district purposes.

Both suits here consolidated for trial and appeal were brought by the same parties to enjoin the levy of these taxes on their property in Mason county. In the first suit, the plaintiffs alleged they were the owners of property in district No. 1, which it was sought to tax for the support of district No. 3. As the commissioners of district No. 3 later disclaimed a purpose to levy taxes on property embraced within district No. 1, the second suit was brought by the plaintiffs to enjoin the levy on property owned by them in Mason county outside the boundaries of district No. 1.

The trial court made the following findings of fact pertinent to the issues:

"(5.)  That Public Utility District No. 1 filed its petition for formation of such district on Dec. 17, 1930, being the first petition filed under said Act in Mason County and was placed upon the election ballot at the 1934 general election and established by a vote of the electors.

"(6.)  That said Utility District No. 1 is the owner of and is operating a public utility, supplying light and power to the inhabitants of said district.

"(7.)  That Petition for the formation of Public Utility District No. 3 was filed July 2, 1934, and that its powers, privileges and purposes are identical with

those of District No. 1 under the provisions of said Act. That the Petition filed, included within its boundaries, which are co-extensive with Mason County, the territory previously included in District No. 1.

"(8.) That District No. 3 did not give notice or hold a hearing on the question of benefits to the property included within its boundaries.

"(9.) That District No. 3 prepared a budget in 1935. That the notice of hearing on said budget was first published on Sept. 26, 1935; that a second notice was published on Oct. 3, 1935, and a hearing was held on said budget on Oct. 7, 1935."

The court also found that the plaintiffs admitted certain facts appearing in the affirmative answer of the defendants in the first suit. One of the facts so admitted, material here, was:

"That the Treasurer of Mason County, proposes, under direction of the officers of District No. 3, to tax the property of plaintiffs and others similarly situated, outside of the boundaries of District No. 1 and to refrain from taxing all property within District No. 1."

From its findings, the court deduced the following conclusions of law:

"(1.) That Public Utility District No. 1 of Mason County, is prior in time, as to the initial steps in its organization, and therefore prior in right as to exclusive jurisdiction over the territory included within its limits, and that said Public Utility District No. 3 has no power or right to levy taxes or assessments upon property within said District No. 1.

"(2.) That by reason of the failure of said District No. 3 to give notice of budget hearing on Oct. 7, 1935, for the period of time required by law, the attempted levy thereunder is illegal and void.

"(3.) That plaintiffs are entitled to a decree enjoining the said defendants, their officers, agents and employees from extending or causing to be extended upon the tax rolls of Mason County, and from the levy and collection thereof of any and all taxes against any

and all property within the boundaries of said District No. 3.''

A decree was, accordingly, entered restraining the defendants

'' . . . from extending upon the rolls of Mason county, levying or collecting any taxes, either within the boundaries of Public Utility District No. 1 or within the boundaries of Public Utility District No. 3, for public utility purposes of said Public Utility District No. 3.''

While the court, concluding the levy to be invalid for insufficiency of notice on the budget hearing, did not specifically pass upon the legality of the organization of district No. 3, that question is suggested by the findings and is discussed at length in the briefs. Even though we might differ from the views of the court on the question of notice, yet if, from the facts found by the court, it should appear that district No. 3 had no legal existence, then the judgment of the court would have to be affirmed.

Since the court based its judgment upon the lack of a sufficient notice of the budget hearing, we shall first consider that issue.

Section 6, p. 11 (Rem. Rev. Stat., § 11610 [P. C. § 4498-16]), subd. (g), of the act provides that the commission shall prepare a proposed budget of its contemplated financial transactions for the ensuing year and file the same in the records of the commission on or before the first Monday in September. Notice of the filing of the proposed budget and the date and place of hearing shall be published for at least two consecutive weeks in a newspaper printed, and of general circulation, in the county. On the first Monday in October, the commission shall hold a public hearing on the proposed budget, at which any taxpayer may appear and be heard against the whole or any part of the

budget. At the conclusion of the hearing, the commission shall, by resolution, adopt the budget as finally determined, and fix the amount of expenditure for the ensuing year.

The budget hearing was held on October 7, 1935, being the first Monday in October, as prescribed by the act. The first publication of the notice, however, was had on September 26 and the second on October 3, 1935, thus falling a few days short of the full two weeks. It is the respondents' contention, adopted by the trial court, that the requirement for the full two weeks' publication prior to the hearing is mandatory, and that, consequently, the budget, and levy based upon it, were illegal. We are unable to accept this view.

In our opinion, the requirement for a two weeks' notice is directory rather than mandatory. The act itself definitely fixes the date of the hearing. It is to be borne in mind that the act contemplates the organization of municipal corporations for the performance of important public duties. One of the primary requisites to the performance of these duties is the preparation of a budget and the levy of the necessary taxes. Since the act contemplates that utility districts are to be going concerns, it is not to be assumed, in the absence of compelling language, that the voters intended the suspension of the district's operations for failure of its officers to publish the notice of the budget hearing for the full period.

In *Wingate v. Ketner,* 8 Wash. 94, 35 Pac. 591, it was held that a statutory provision requiring the council of a city to make a tax levy thirty days after the assessment roll had been certified to it was declaratory rather than mandatory, and that failure to strictly comply therewith would not deprive the city of the right to make a tax levy for the year. To the same ef-

fect is *New Seattle Chamber of Commerce v. Seattle,* 88 Wash. 620, 153 Pac. 351.

In *Rands v. Clarke County,* 79 Wash. 152, 139 Pac. 1090, there was involved the legality of an election, held in Clark county, to authorize a bonded indebtedness, to aid in the construction of an interstate bridge across the Columbia river. It was objected that a statutory requirement for four weeks' publication of notice of the election had not been complied with. Meeting this objection, the court said:

"This, it is claimed, renders the election and all subsequent acts founded thereon invalid. This court, however, early held that requirements of a statute providing for the giving of notices of an election, either general or special, were directory rather than mandatory, unless the statute itself declares that the election shall be void if the statutory requirements are not strictly observed, or the court can see from the record that the result of the election might have been different had there been a strict compliance with the statutory requirements. *Seymour v. Tacoma,* 6 Wash. 427, 33 Pac. 1059; *Richards v. Klickitat County,* 13 Wash. 509, 43 Pac. 647; *State ex rel. Mullen v. Doherty,* 16 Wash. 382, 47 Pac. 958, 58 Am. St. 39; *Hesseltine v. Wilbur,* 29 Wash. 407, 69 Pac. 1094; *Murphy v. Spokane,* 64 Wash. 681, 117 Pac. 476; *Hill v. Howell,* 70 Wash. 603, 127 Pac. 211. In *State ex rel. Mullen v. Doherty,* Judge Gordon, delivering the opinion of the court, used this language:

" 'The rule established by an almost unbroken current of authority is that the particular form and manner pointed out by the statute for giving notice is not essential, and where the great body of the electors have actual notice of the time and place of holding the election, and of the questions submitted, this is sufficient. The vital and essential question in all cases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election.'

"In this instance, it is conceded that there is no statutory provision declaring the election void if the statutory notice be not given; nor are we able to discover from the record that the result of the election might have been different had notice thereof been given in the strictest compliance with the statute. On the contrary, it appears that the object and purpose of the election, as well as the time and places at which the election was to be held, were given the widest publicity."

In the case before us, the date of the hearing was not dependent on the notice but fixed by the organic law governing utility districts and, presumably, known to all property owners affected. It is not shown that anyone was injuriously affected by the failure of notice for the full period, nor that any different result would have followed if the full notice had been given.

On the question of the legality of the organization of district No. 3, it is the respondents' contention that the district could not embrace or "appropriate" the territory included in the smaller district and could not, therefore, in fact, be a county-wide district; and, being less than a county-wide district, could not be legally formed without a hearing on the question of benefits. Admittedly, no hearing was held.

Characterizing the act, the respondents say in their brief:

"The law does in fact state that county-wide may be formed under a certain specified procedure and that a less than county wide may also be formed under a different procedure, and also provides for consolidation.

"But in the very nature of things, these provisions are impossible from a practical standpoint. In other words, the law is loosely drawn and impossible of application to a situation of this character, both from a legal and physical standpoint."

While the uncertainty of the act may be somewhat overstated by respondents, some of its provisions un-

doubtedly present difficulty in their construction and application; this is the sixth time the act has been here for construction.

As conceded by respondent, the act seems to contemplate the coexistence of county-wide and smaller districts in the same county. Section 10, p. 28, of the act (Rem. Rev. Stat., § 11614 [P. C. § 4498-20]) provides for the consolidation of two or more contiguous public utility districts, and continues:

"In all cases wherein public utility districts of less area than an entire county desire to be consolidated with a public utility district including an entire county, and in all cases wherein it is desired to enlarge a public utility district including an entire county, by annexing a lesser area than an entire county, no election shall be required to be held in the district including an entire county."

This language necessarily implies the coexistence of the two types of districts. The respondents' contention that, if a lesser district exists within the county, no county-wide district may be formed without a preliminary hearing on the question of benefits, is answered, at least in principle, by our decision in *State ex rel. Washington Water Power Co. v. Superior Court,* 187 Wash. 309, 60 P. (2d) 263. In that case, the right to organize a county-wide district in Stevens county was challenged on the ground that the city of Chewelah, owning and operating all the utilities authorized by the act, could not be included within the proposed district, and hence, the district not being county-wide in fact, a preliminary hearing was required.

"This act shall not be deemed or construed to repeal or affect any existing act, or any part thereof, relating to the construction, operation and maintenance of public utilities by irrigation or water districts or other municipal corporations, but shall be supplemental

thereto and concurrent therewith. No public utility district created hereunder shall include therein any municipal corporation, or any part thereof, where such municipal corporation already owns or operates all the utilities herein authorized; Provided, that in case it does not own or operate all such utilities it may be included within such public utility district for the purpose of establishing or operating therein such utilities as it does not own or operate; Provided, further, That no property situated within any irrigation or water districts or other municipal corporations shall ever be taxed or assessed to pay for any utility, or part thereof, of like character to any utility, owned or operated by such irrigation or water districts or other municipal corporations.'' Section 12, p. 29, Rem. Rev. Stat., § 11616 [P. C. § 4498-22].

The court, after saying that, in its opinion, the weight of the testimony was against the contention of the plaintiffs that the city of Chewelah was operating all the utilities authorized by the act, continued:

''Still further, however, the act provides for two kinds of districts, territorially: One, coextensive with the county; the other, of less area than the county. The first kind is created by the act of the legislature; the other, by petition of the electors fixing the boundaries in their petition. Section 12, p. 29, of the act is, of course, the language of the legislature, and contains nothing inconsistent with the idea that the author of that language may itself create a public utility district coextensive with the county and bring it into operation by a majority vote of the electors of the county. Such was the holding in our recent cases hereinbefore mentioned. That is the procedure being followed in this case.''

In other words, the act itself defines county-wide districts and fixes their boundaries as the county boundaries, even though there may be, within these boundaries, cities or small utility districts operating all or some of the utilities authorized. The opinion im-

plied that, even if the city of Chewelah were operating all of the utilities, so as to exclude it from the jurisdiction of the county-wide district, the district would, nevertheless, be one of legislative creation, not requiring a preliminary hearing.

All of the counties of the state have within their limits cities authorized to operate, and many of them in fact operating, all the utilities covered by the act. To hold that a county-wide district could not be organized in any county having a city furnishing water and electricity would, in a large measure, defeat the purpose of the act. If the existence of the city type of municipal corporation does not prevent the organization of a county-wide district, we can see no reason for holding that the existence of a smaller utility district destroys the right to organize a larger district.

What we have said is determinative of the controlling issues involved on this appeal. Other questions argued in the briefs, we do not feel called upon at this time to decide.

Having reached the conclusion that county-wide district No. 3 was legally organized and that the failure to publish the notice of the budget hearing for the full two weeks' period prior to the hearing, did not invalidate the levy, it follows that the judgment of the trial court must be reversed, and the cause remanded with direction to dismiss.

MILLARD, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.