[No. 35387. *En Banc.* December 14, 1959.]

THOMAS P. ALLEN *et al., Plaintiffs,* v. PUBLIC UTILITY DISTRICT No. 1 *et al., Defendants and Relators,* THE SUPERIOR COURT FOR THURSTON COUNTY, *Charles T. Wright, Judge, Respondent.*[1]

[1]Reported in 347 P. (2d) 539.

*Lynch & Lynch* and *Houghton, Cluck, Coughlin & Henry,* for defendants and relators.

*O'Leary, Meyer & O'Leary,* for respondent.

Hill, J.—We are here reviewing a permanent injunction issued November 2, 1959, by the superior court of Thurston county against (a) Public Utility District No. 1 of Thurston County; (b) the commissioners of that district; and (c) certain elected officials of Thurston county. The injunction brings to a halt all proceedings that would result in the levy and spreading of a tax of 1.97 mills for 1960 on all taxable property in the district. The purpose of the proposed tax levy by the public utility district is to raise one hundred thousand dollars for

". . . all expenses related to the acquisition by purchase or condemnation of electrical properties operated by the Puget Sound Power & Light Company, including engineering, legal, accounting, and other costs."

The injunction was secured by the plaintiff taxpayers who attacked the validity of the purported levy on the grounds that the public utility district's proposed budget, as filed, and the published notices of the hearing thereon were insufficient and deceptive in character.

The policy question of whether the public utility district should acquire, by purchase or condemnation, the properties of the Puget Sound Power & Light Company is no concern of the courts. The only question is: was there

a substantial compliance with RCW 54.16.080 which, so far as here material, reads as follows:

" . . . A district may raise revenue by the levy of an annual tax on all taxable property within the district, not exceeding two mills in any one year, exclusive of interest and redemption for general obligation bonds. The commission shall prepare a proposed budget of the contemplated financial transactions for the ensuing year and file it in its records, on or before the first Monday in September. Notice of the filing of the proposed budget and the date and place of hearing thereon shall be published for at least two consecutive weeks in a newspaper printed and of general circulation in the county. On the first Monday in October, the commission shall hold a public hearing on the proposed budget at which any taxpayer may appear and be heard against the whole or any part thereof. Upon the conclusion of the hearing, the commission shall, by resolution, adopt the budget as finally determined, and fix the final amount of expenditures for the ensuing year. Taxes levied by the commission shall be certified to and collected by the proper officer of the county in which the district is located in the same manner as provided for the certification and collection of port district taxes. . . ."

The facts are not in dispute. We shall set them out, so far as material, in connection with each of the statutory steps.

The statute provides that the commission shall file

" . . . a proposed budget of the contemplated financial transactions for the ensuing year and file in its records, on or before the first Monday in September. . . ."

The first Monday in September, 1959, was the 7th. At its meeting on September the 2nd the commission presented and filed a proposed budget of "contemplated financial transactions for the ensuing year," showing general fund expenditures of $24,800. To balance this amount, the proposed budget showed:

"Estimated cash on hand.......... $24,000.00
Estimated revenues (interest).... 800.00
*To be raised by taxation*........ *None*
—————
$24,800.00"
(Italics ours.)

By resolution, adopted the same day, the commission fixed 8:00 o'clock a.m., October 7, 1959 (that being the date of its regular monthly meeting, *i.e.*, the first Wednesday in the month), at 208 Thurston Savings and Loan Building, Olympia, Washington as the time and place at which

" . . . any taxpayer may appear and be heard against the whole or any part of the proposed budget. . . . "

It also directed that notice of such hearing be given by publication in the Olympia News "for at least two (2) consecutive weeks prior to the said October 7, 1959," and *directed that the proposed budget be published in full as part of the notice.*

■ The notice was published, as directed, in the Olympia News on September the 10th and 17th, 1959. The notice went beyond the requirements of the statute; it contained the entire proposed budget, showing the expenditures and the sources from which the funds were to come to meet those expenditures, and included the significant statement, "To be raised by taxation . . . None." The notice failed to follow the statute, in that the date fixed by the statute for the "public hearing on the proposed budget" was "the first Monday in October," which would have been October 5, 1959.

This failure to follow the statute explicity, with reference to the date, did not invalidate the hearing on October 7, 1959, pursuant to the notice given. Such a deviation (to October the 7th) from the date fixed by the statute (October the 5th), when accompanied by proper notice of the date on which the hearing was actually held (October the 7th), clearly comes within the doctrine of substantial compliance, which we have so clearly stated and consistently followed. *Davis v. Gibbs* (1951), 39 Wn. (2d) 481, 236 P. (2d) 545; *School Dist. No. 81 of Spokane County v. Taxpayers of School Dist. No. 81 of Spokane County* (1950), 37 Wn. (2d) 669, 225 P. (2d) 1063; *Davies v. Krueger* (1950), 36 Wn. (2d) 649, 219 P. (2d) 969; *Hillier v. Public Utility Dist. No. 3* (1936), 188 Wash. 602, 63 P. (2d) 392; *New Seattle Chamber of Commerce v. Seattle* (1915), 88

Wash. 620, 153 Pac. 351; *Rands v. Clarke County* (1914), 79 Wash. 152, 139 Pac. 1090; *Wingate v. Ketner* (1894), 8 Wash. 94, 35 Pac. 591.

(There was a change in the time of the meeting on October the 7th from 8:00 a.m. to 8:30 a.m., and in the place—from 208 Thurston Savings & Loan Building to the conference room of the general administration building on the state capitol campus. However, adequate steps were taken to advise those who came to attend the hearing, at the time and place indicated in the notice, as to the change. We do not regard the change in time and place, under such circumstances, as material.)

October 5, 1959, being the first Monday and the day fixed by statute for the budget hearing, the commission met —with three persons present, other than attorneys. It adopted the proposed budget and added thereto an item of one hundred thousand dollars

"For all expenses related to the acquisition by purchase or condemnation of electrical properties operated by the Puget Sound Power & Light Company, including engineering, legal, accounting, and other costs."

(It is our view that there was no notice of this meeting; an abortive attempt to give notice will be hereinafter discussed.)

Then the commission met for its regular monthly meeting on October 7, 1959; this was the meeting concerning which notice had been published, with the change in time and place to which we have heretofore referred. At this meeting there was an estimated attendance of one hundred and fifty, it having been widely publicized following the action taken by the commission at its October 5, 1959, meeting.

The minutes of the meeting state:

"Chairman Meyer stated that he understood that many of the persons present today wanted to express their opinions one way or the other on the adoption of the operating budget for the Public Utility District for the calendar year 1960, and that the floor would be thrown open for discussion of the matter. He stated that the Commission had adopted a budget for the year 1960 on Monday, October 5, 1959, as the minutes which had just been read disclosed, but that

there had been some question as to whether or not the proceedings were proper as the original notice of the budget hearing had called for a hearing on the budget for the 7th of October."

The discussion at this meeting was full and free. The commission then adopted resolution No. 146, which recited that it had adopted the budget at the meeting on Monday, October the 5th, but that there had been some question as to the validity of the adoption of the budget on that date because of the notices specifying October 7th as the date of the hearing; and that, in consequence thereof, the commission

". . . in all respects confirmed and approved . . . the operating budget for the Thurston County Public Utility District No. 1 for the calendar year 1960,"

which had been adopted at the October 5th meeting.

Again, we would hold in accord with the spirit of our decisions on substantial compliance, heretofore cited, that the action of October 7th constituted an adoption of the budget despite any irregularities with reference to notice of the October 5th meeting.

We come now to the real crux of this controversy: whether there has been a substantial and good faith compliance with the quoted statute where the commission has (1) prepared and filed in its records "a proposed budget of the contemplated financial transactions for the ensuing year," which contains the statement "To be raised by taxation . . . None"; (2) published two notices of hearing (setting out that proposed budget with that statement in it); and (3) then adopted a budget containing an additional item of one hundred thousand dollars (more than four times its total general fund budget as proposed) to be raised by taxation. It is important, too, that the first notice of any such contemplated increase or tax levy was the purported adoption of the budget October 5, 1959, two days before the scheduled and publicized meeting October 7, 1959.

The answer must be that there has been no compliance with the statute in spirit or in truth.

This is, in no sense, a withdrawal from the position we have heretofore taken: that we will not permit disgruntled taxpayers to harass or obstruct the orderly processes of government (including taxation) by an insistence on a literal application of directory statutes fixing the time at which certain steps are to be taken, or the type and character of notices to be given. We are committed to the doctrine of substantial compliance with directory statutes, and are more concerned in these procedural statutes with the spirit than the letter. The test is, has there been a good faith and substantial compliance with the statute and an achievement of the purpose of the statute.

But this position cannot be warped and twisted, as the relators seek to do here, to justify the publication of misleading assurances such as "General Fund . . . To be raised by taxation . . . None." What we have here is no part of substantial compliance, it is a deliberate doing by a public body of what it three times notified the public it would not do. Once, when the proposed budget was filed on September 2, 1959; and, if there had never been a notice published, the public should be able to rely on the fact that the only proposed budget ever filed—and which remained on file at all times after September the 2nd— said "To be raised by taxation . . . None." No attempt was made to change or amend the proposed budget, as filed, until October 5, 1959. The quoted statement in the proposed budget was repeated twice more in the published notices of September 10th and 17th of the October 7th meeting.

■ It is true, as the commission argues, that it was not obligated to publish the budget as part of its notice; but when it did, it was obligated not to mislead and deceive the public by the statement "To be raised by taxation . . . None."

■ Even though surplusage in a notice does not vitiate the validity of it, surplusage which is untrue and calculated to affirmatively mislead the public—and does so to their prejudice—does not conform to the legal requirements of notice. *Russell v. Bon* (1915), 221 Mass. 370, 108 N. E.

1048; *In re Village of Lynbrook* (1911), 142 App. Div. 487, 127 N. Y. Supp. 82; *City of Huntsville v. McCraw* (1937)., 130 Tex. 121, 108 S. W. (2d) 204; *Wolf v. Wolf* (1912),, 88 Kan. 205, 128 Pac. 374.

In *City of Huntsville v. McCraw, supra,* where the notice by the city, to issue bonds, stated that the bonds were to be paid from revenue of municipal plants rather than taxation and not to be a lien on physical properties of the city, but the bonds, as issued, stated that they were a lien on property of the city, the court said, in invalidating the bonds (p. 125),

" . . . The respondent is correct in his contention that the notice given was calculated to be affirmatively misleading. Such being the case, we can not bring ourselves to the conclusion that it is his ministerial duty to approve these bonds."

In *In re Village of Lynbrook, supra,* the court (speaking of a notice of an election) said (p. 84),

" . . . Having attempted to 'specify' more completely than the statute possibly required, it was the duty of the town clerk . . . to specify accurately."

The public was given no notice until the meeting of the commission on October 5, 1959 (of which, as we will see, no identifiable notice was ever published), of an intention to levy any taxes. The only notices given by the commission were of the October 7th meeting, and contained the positive and misleading assurance that no tax was to be levied.

We are not holding that items in a proposed budget cannot be raised at a budget hearing; that issue need not be decided here. We hold only that budget items cannot be raised where the revenue which would make the raise effective must come from a source which the public was advised would not be used.

The commissioners seek, by various arguments, to uphold their purported tax levy and to justify setting aside the injunction issued by the trial court.

First: They urge that an adequate notice of the meeting of the commission on October 5, 1959, was given (Septem-

ber the 17th and September the 24th); and that the budget adopted October the 5th was final. We shall now consider the notice of the October 5th meeting relied on by the commission. By its resolution of September the 2nd, the commission fixed October 7, 1959, as the date of hearing on the proposed budget. That resolution was never changed or amended by any act of the commission until October 5, 1959. It appears, from the record herein, that two of the commissioners came to the office of the attorney for the commission on the 10th day of September, 1959, and advised him

" . . . that they had been requested by numerous citizens of Thurston County to take steps looking toward possible acquisition of the Puget Sound Power & Light Company properties in Thurston County, and that they thought that it might be necessary for this purpose to raise additional funds by millage, and that the hearing date on the budget should be on the statutory hearing date on the first Monday of October [the 5th] rather than on the regular meeting date on the first Wednesday of the month [the 7th]; . . . "

It is not contended that this was a regular meeting of the commission; it was an informal discussion in the attorney's office, no more. It was then and there decided that an amended notice should be published, fixing the hour of 8:00 a.m., October 5, 1959, as the time for the public hearing on the budget. It is, perhaps, significant that although the raising of funds by millage was in the minds of at least two of the commissioners by September 10, 1959, "the proposed budget of the financial transactions for the ensuing year," on file in their office for the benefit of the public, was not amended until October the 5th—the date, incidentally, which the commission strongly urges was the date of the hearing at which final action was taken. The second notice of the meeting on October 7, 1959, was published on September 17, 1959, with the statement "To be raised by taxation . . . None." It is important to note that the amended notice, furnished to the Olympia News, by which it was sought to publicize the meeting on October the 5th, contained the same statement. That portion of the

amended notice was not published because of a printer's error; and the notice, as published September 17th and 24th, was as follows:

"AMENDED NOTICE

"NOTICE IS FURTHER GIVEN That a hearing will be had at 8:00 o'clock, A.M. on Monday, October 5, 1959, at the office of the Commission at 208 Thurston Savings and Loan Building, Olympia, Washington, at which meeting any taxpayer may appear and be heard against the whole or any part of the proposed budget, and that upon the conclusion of the hearing the Commission will by resolution adopt the budget as finally determined and fix the amount of expenditures for the ensuing fiscal year.

"THIS NOTICE supplements and amends the notice heretofore published under the date of September 10, 1959, which gave notice of the date of the budget hearing as 8:00 o'clock, A.M. on Wednesday, October 7, 1959, the true date of the budget hearing being as above set forth at 8:00 o'clock, A.M. on Monday, October 5, 1959, at the office of the Commission at 208 Thurston Savings and Loan Building, Olympia, Washington.

"DATED at Olympia, Washington, this 10 day of September, 1959."

■ This notice was never authorized by the commission; it did not tell who was meeting; it did not tell who was giving the notice; as a notice, it was a complete nullity. If it had been published, as delivered to the paper, it would have indicated its purpose of changing the date of the budget hearing from October 7, 1959, to October 5, 1959; but it would have given no notice of an intention to raise money by taxation, and would have repeated again the statement: "To be raised by taxation . . . None."

The relators insist that the levy should not be invalidated by a printer's error. This is no case of a printer's error invalidating anything.

This claimed notice simply has no bearing on the issue which is the basis of this decision, except that the circumstances surrounding it accentuate, if anything, the withholding from the public of the purposes and intentions, then formed, of raising money by taxation. The vice in the situation would have been the same, if the second

notice had been published exactly as they submitted it to the Olympia News, because it would have again said "To be raised by taxation . . . None"; whereas, in truth, the commissioners contemplated raising one hundred thousand dollars by taxation when they submitted the notice of the October 5th meeting to the paper.

Second: It is urged that October the 5th was the date fixed by the statute: that the public was charged with knowledge of the statutory requirement; and that the meeting on that date was the only date at which they could have a budget hearing. In short, they now ask for a literal construction of the statute; the public, they argue, should know better than to rely on and to be misled by any notices the commission may publish.

We do not comment on the morality of the argument. There was no compliance with notice, substantial or otherwise, so far as the October 5, 1959, meeting was concerned.

But this still begs the basic question of whether, on either October 5th or 7th, the commission could levy a tax —when it had, in its proposed budget on file and in its published notices of the hearing, advised the public that it would not do so—and still claim a compliance in good faith with the quoted statute.

Third: The relators urge that after the meeting on October the 5th, there was ample notice of the proposed tax levy before the hearing on October the 7th. They emphasize radio broadcasts, newspaper stories, and paid advertisements of the taxpayers' association, as well as the attendance of one hundred and fifty people at the hearing.

We have held that the statutory notice cannot be dispensed with because of wide publicity furnished by other media. *Davis v. Gibbs, supra; Dunn v. Centralia* (1929), 153 Wash. 495, 280 Pac. 26. We are satisfied that the commission could not mislead the public in the notices it published, and then rely on what somebody else did to publicize the true situation.

Fourth: The relators urge that, after all, what difference does it make; the commission had the authority to make the levy, even if every taxpayer in the county

had opposed it. The purpose of the meeting was to give the taxpayer an opportunity to appear and be heard; and, having been heard, the commission could then levy the tax. This is an amoral argument; its substance is that all requirements relative to notice of hearings and the filing of a "proposed budget of the contemplated financial transactions for the ensuing year," are window dressing; we will file what we please; we will give such notice as we please; and, then, do as we please.

There must still be a good faith and substantial compliance with the statute; and substantial compliance cannot be tinctured with bad faith and deception.

Fifth: Relators urge that Laws of 1931, chapter 62, p. 201 (RCW chapter 84.68) limits the issuance of injunctions to restrain the collection of a tax, except (1) where the tax is void, or (2) where the property upon which it is imposed is exempt from taxation. RCW 84.68.010.

 This is not an action to restrain the collection of a tax. There is no tax to be collected, and there will not be, if the trial court's injunction remains in effect. The purported levy, is, for the reasons we have indicated, invalid. A levy is not collectible until merged into a tax in specific sums against specified property. The rule laid down in *Denny v. Wooster* (1933), 175 Wash. 272, 27 P. (2d) 328, is clearly applicable here. In that case we said (pp. 276, 277),

"There is a reason for this construction of the language against granting injunctions with respect to the *collection* of a tax as distinguished from a levy. A levy is not collectible until merged into a tax in specific sums against specified properties. At the commencement of this action, at the time the judgment was entered, or indeed at the present time, even if these injunctive proceedings had not been brought, a taxpayer could not pay taxes under the levies in question; nor could the county have collected them by agreement with the taxpayer, or otherwise. It ought not be held that, prior to the right to pay or collect taxes, a taxpayer should be deprived of the right to seek redress against a threatened course of official action leading to the imposition and lien of a void tax. The essential purpose of statutes against injunctive remedies in tax cases is to prevent the delays of legal proceedings interfering with

the maintenance and operation of government. But that reason does not apply in such case as this, where the appeal to equity is diligent and in sufficient time to avoid evil results."

We find no merit in any argument advanced by the relators for the reversal of the judgment. The judgment, however, does restrain the collection, as well as the levy, of the tax. The word "collection" in the judgment is unnecessary, because, unless the taxing authorities can make a valid levy and spread the tax on the rolls, there will never be a tax to collect.

The judgment of the trial court is affirmed.

WEAVER, C. J., DONWORTH, OTT, and FOSTER, JJ., concur.

MALLERY, J. (dissenting)—I dissent because (1) I think the majority draws unwarranted conclusions of law from the facts herein, and (2) the remedy for the supposed evil is (a) inappropriate, (b) without sanction of law, and (c) unconstitutional.

(1) There is nothing in the record to impugn the good faith of the public utility district commissioners in preparing and filing the proposed budget, which was done in strict conformity with the law. No one contends it did not fairly represent their state of mind when it was filed. The record is clear that it was subsequent to the filing of the proposed budget that the commissioners changed their minds regarding the desirability of levying a tax to implement a study of the feasibility of taking over the electrical transmission facilities in the district.

The majority's conclusion that there was bad faith and deception on the part of the public utility district commissioners has no factual support other than the bare fact of this *change*, which was reflected in the final budget. If the *change* violated the law, I could agree with the inference of bad faith. Such a conclusion does not follow, however, if the statute contemplates such changes.

The statute does contemplate that the budget, as finally adopted, may differ from the proposed budget, and it does not limit the extent of the change which may be

made. The preparation and filing of a proposed budget serves no purpose other than to implement the legislative intent to subject the final budget to the influence of public opinion. The sum total of the taxpayers' right in the matter is simply to be heard, and, to this end, the statute requires a notice of the time and place of the hearing.

If the statute did not contemplate changes in the final budget after the filing of the proposed budget, the provision for a hearing would be meaningless, and the proposed budget would, in fact, be the final budget.

The change in question was made within the statutory power of the commissioners. The conclusion of the majority that it was in bad faith and deceptive has no basis other than the erroneous conclusion that any change is deceptive *per se.*

The taxpayer has a right to be heard, nothing more. Bare notice of the time and place of the hearing discharges the duty of the commissioners in this regard. The taxpayer must be held to know, as a matter of law, that changes in the proposed budget may be considered and they may be adopted in the final budget. If a taxpayer cares to exercise his right to be heard, he must attend the hearing. He cannot complain of any turn of events culminating at the hearing either in his presence or his absence. In any event, a hearing pursuant to notice of time and place satisfies in full his right to be heard.

(2) (a) The remedy herein is inappropriate for the supposed wrong suffered by the taxpayers in being deprived of the right to be heard. The right to be heard does not include the right to influence or control the result of the hearing. Having no justiciable interest in the substance of the final budget, they have no right to modify or nullify it by a decree of court. Their right, in a proper case where the requirement of notice of hearing was not substantially complied with, would at most call for a hearing to be had upon proper notice.

A taxpayer has a right to compel public officials to comply with the law, but not to exercise their discretion in any particular way in matters of administrative policy. Thus,

if a contract is required to be let on bids, a taxpayer may compel compliance with the requirement that it be so made. A taxpayer may only seek compliance with the law, he cannot as a member of a dissident minority procure a judicial veto of the administrative policies of the constituted authorities.

The budget and tax levy here in question have the full sanction of law, and the decision of the commissioners is not reviewable as to the policy adopted. Hence, the injunction in question is not relevant or appropriate to the wrong asserted.

(2) (b) The majority holding that the commissioners cannot exercise their power to levy the tax in question is predicated upon their inferred deception of the taxpayers. It is an application of the doctrine of estoppel which is implemented by the injunction. Such an injunction has no sanction in law because the doctrine of estoppel cannot be invoked against public officials by way of forfeiting their power to act on behalf of the public within the limits of their authority.

(2) (c) The injunction is an unconstitutional exercise of power. The taxpayer has no justiciable right in the policies adopted by the commissioners and cannot control them by court action. The decision to tax or not to tax, in conformity with the power conferred upon the commissioners by law, is administrative in nature and is not subject to judicial review. The injunction is a judicial invasion of the administrative branch of the government.

I dissent.

FINLEY, ROSELLINI, and HUNTER, JJ., concur with MALLERY, J.

FINLEY, J. (dissenting)—I have signed the dissent by Judge Mallery, but wish to add my own comment respecting the reasoning of the majority.

The majority opinion all but concedes that the applicable statute authorized the P.U.D. commissioners (at a subsequent hearing) to increase or decrease the annual budget;

*i.e.;* after it was filed on September 2, 1959. However, by a process of interpretation, the majority reaches a conclusion that inclusion in the budget filed on September 2, 1959, of the words, "to be raised by taxation . . . none," restricts and limits the statutory power conferred upon the commissioners by the legislature itself.

At this point I pose a question, which I confess seems to me pointlessly naive because its answer appears so obvious. Where does the commission obtain its power to act—from the state legislature or from the state supreme court? Furthermore, is it the legislature or the court which determines the public policy of our state that is controlling respecting the actions of the commission?

The majority opinion certainly suggests that the commission could increase or decrease its budget, provided the changes involve revenue from sources other than taxation. However, the budget filed on September 2, 1959, affirmatively stated, and affirmatively gave notice regarding expenditures and items of revenue other than from taxation.

The crux of the matter seems to be that the majority thinks that the commission is irrevocably bound as to any statements it happens to make regarding taxation, but is not so bound as to any statements that may be made regarding expenditures and items of revenue from sources other than taxation. No such distinction is spelled out in the applicable statute. It appears to me that any such distinction is conceived purely and simply as a matter of emotional reaction of the majority regarding the mention of taxation in the commission's budget.

On the basis of the foregoing, I have concurred in the dissenting opinion written by Judge Mallery.

---

January 13, 1960. Petition for rehearing denied.